GEORGE DOUGHERTY v. THOMAS S. MILLER AND
. C. W. MILLER.

JURISDICTION TO IMPROVE STREET IN SAN FRANCISCO.—The Board of Supervisors
of the City and County of San Francisco acquire jurisdiction of the subject
matter of improving a street in the City of San Francisco after the expiration
of the notice of intention to improve.

ASSESSMENT FOR STREET IMPROVEMENT IN SAN FRANCISCO.—If, at the time the
Board of Supervisors of San Francisco acquire jurisdiction to improve a street,
and when the contract is entered into, any part of the land fronting on the street
to be improved constitutes one lot, the contractor is entitled to have the cost of
the improvement made opposite the lot assessed on the whole of the same, in one
assessment; and no subsequent change in cutting up the lot by selling parts of
the same can defeat that right.

LIABILITY OF LOT FOR STREET IMPROVEMENT.—The jurisdiction of the Board of
Supervisors of San Francisco to improve a street and render a lot fronting on
the same liable for an assessment for the cost of such improvement, when it once
attaches, extends to the whole lot through all the subsequent proceedings,
although it may afterwards, and before the ·assessment is made, be divided by
sales to different parties.

LIEN OF CONTRACTOR ON LOT FOR IMPROVEMENTS.—If, at the time a contract in
San Francisco is regularly let to improve a street, a lot fronting on the same is
owned as one lot, the owner cannot, by selling a part of it before the assessment
is made, prevent the whole of it from being assessed as one lot to pay the cost;
and cannot, by such sale, prevent the contractor from having a lien on the whole
lot for such assessment, even if the part sold extends along the entire front next
to the street. Such lien attaches to the whole lot, into whosesoever hands it
may go.

APPEAL from the District Court, Fourth Judicial District,
City and County of San Francisco.

The facts are stated in the opinion of the Court.

*R. T. & Jabish Clement*, for Appellant.

The appellant relies upon the following propositions to
sustain his appeal:

1st. If assessments were erroneous for extending too far
back from the frontage—for extending across conventional
lines of subdivision—the error could not be taken advantage
of except by appeal to the Board of Supervisors. (Stats.
1862, p. 391, Sec. 12; *Guerin* v. *Reese*, 33 Cal. 292.)

2d. The Superintendent is not required to take notice of

subdivisions of official lots not of the frontage. The assessment is upon the frontage, without regard to area; and the Superintendent performs his whole duty when he measures the frontage of the "lots" and "parts of lots"—the official subdivisions and parts of official subdivisions.

*3d. It would be error for the Superintendent to notice subdivisions of lots not indicated by visible boundaries. The law concerning assessments for taxes evidently contemplates that each lot of well known dimensions and boundaries shall be assessed as one lot. (*Bidleman* v. *Brooks*, 28 Cal. 73.)

By analogy, the same rule is applicable to street assessments. In this case, the "lot" to which the lien is limited by the Court, is one of unusual dimensions, and was not indicated by visible boundaries, and was used by the occupants of the remainder of the lot.

*G. F. & W. H. Sharp,* for Respondent.

The appellant insists that the Superintendent of Streets, in making the assessment, is not confined to the lots as they exist in fact, and several ownership. He seems to think that a lot is a piece of land having necessarily a depth of fifty varas. The assessment in this case is in direct conflict with his views, for the Superintendent confined his assessment to a depth of one hundred and twelve feet.

But we insist that the Consolidation Bill alone declares and fixes the liability of property holders. The requirements of this law must be strictly pursued. The respondent's property is clearly exempt.

Section eight, subdivision four of the Consolidation Bill enacts that the cost of grading shall be assessed upon all land, lots or portions of lots, *fronting* on either side of such street.

Section ten enacts that after recording warrant, assessments, and diagram, the assessment shall be a lien on the land subject to assessment. The Superintendent can, therefore, assess such lands only as can be the subject matter of

an assessment, and whenever he assesses lands, lots or parts of lots not fronting on the improved street, the same is absolutely void.

The appellant insists that respondent has lost all rights by not appealing to the Board of Supervisors. The respondent is a stranger to the whole proceeding. He could not take part in preventing the work being done. The right of protest is vested alone in the owners *fronting* on the proposed work. (Sec. 4 of Con. Act.) The owners of the major part of the *frontage* alone have the election of doing the work. (Sec. 6 of same Act.)

By the Court, SAWYER, C. J. :

This is an action to recover a street assessment on a portion of Fifty Vara Lot Number One Thousand One Hundred Thirty-two, in the City of San Francisco. Said fifty vara lot lies at the southeast corner of Clay and Leavenworth streets, fronting one hundred thirty-seven and a half feet on each street. The improvement for which the assessment is levied is on Clay street, in front of said lot; and the portion upon which the assessment sought to be recovered was levied is the whole of said fifty vara lot, except a small lot on the easterly side thereof, fronting twenty-five feet on Clay street, by seventy-five feet in depth. The proceedings for making said improvement were instituted on the 18th of May, 1863, and were regularly followed up till the contract for the work was duly and legally entered into, on the 3d of July, 1863. The contract was in due time fulfilled, and the assessment in all respects regularly made, so far as the prescribed forms are concerned, and the assessment is valid upon such property as was liable to be assessed for the work.

Fifty Vara Lot One Thousand One Hundred Thirty-two is one of the official subdivisions of lots in the city, and there are no smaller official subdivisions of lots in the city where said lot is situate. Six months after the letting of said contract and the beginning of said work, defendant,

*Thomas S.* Miller, was in possession, claiming the whole of the lot described in the complain; but the *legal title* was in the Commissioners of the Funded Debt. During the progress of the work, and a considerable time before the assessment, to wit: in June, 1865, the said *Thomas S.* Miller conveyed to defendant, *C. W.* Miller, a narrow strip fronting one hundred twelve and a half feet on Clay street, being the whole frontage of the lot described in the complaint on the improvement, by *three* feet deep, thus leaving unconveyed in the possession of *Thomas S.* Miller all the remainder of said lot, none of which portion fronted on the improvement. Afterward, in April, 1866, and before the date of the assessment, the Commissioners of the Funded Debt conveyed to said *C. W.* Miller the said strip fronting one hundred twelve and a half feet on the improvement, by three feet deep, being the same before conveyed to him by said *Thomas S.* Miller, and to the said *Thomas S.* Miller the remainder of the lot described in the complaint; but no apparent change was thereafter made in the possession of said lot, or of any portion thereof. *During all the time* of the prosecution of the work, the lot described in the complaint was occupied by three houses belonging to defendant, Thomas S. Miller; and two of said houses fronted on Clay street, and stood thirty feet back therefrom, and were approached and entered both from Clay and Leavenworth streets; and persons going to and from said houses passed over said narrow strip fronting one hundred twelve and a half feet on Clay street, by three feet deep; and during the progress of said work, and at the time of said assessment, the whole lot described in the complaint was unfenced, and there was nothing upon the premises indicating a subdivision of said lot, and two of the houses thereupon fronting toward, and approached from, Clay street, were occupied by tenants of said Thomas S. Miller. Upon this state of facts, the District Court adjudged a lien upon, and directed a sale of, the said narrow strip, fronting one hundred twelve and a half feet on Clay street, by three feet deep only, and dismissed the action as to said

*Thomas S.* Miller and all the remainder of the lot. Plaintiff appeals from the last named portion of the judgment, and the case comes here on the judgment roll alone.

The only question is, whether the whole lot, or only the narrow strip on Clay street, by a depth of three feet, was subject to be assessed for said improvement on Clay street, and on this question we have no doubt. At the time when these proceedings were commenced, and during all the preliminary proceedings down to the time of making the contract, and the performance of a large portion, at least, of the work under it, this lot was in the possession of Thomas S. Miller, by his tenants, claiming to be the owner, the legal title, however, in fact, being in the Commissioners of the Funded Debt. There was no subdivision, official or otherwise, the lot being one undivided lot of land fronting both on Clay and Leavenworth streets. Two of the houses erected on it fronted on Clay street, but were set back more than three feet from the street, and the occupants passed over the three feet strip subsequently conveyed by Thomas S. Miller, and also by the Commissioners of the Funded Debt, to C. W. Miller. The three feet were, both before and after the said conveyances, used in the same manner to pass over to and from the houses—or, in other words, as a part of one and the same lot. The Board of Supervisors acquired jurisdiction of the subject matter of the improvement after the expiration of the notice of intention. (Stats. 1863, p. 526, Sec. 4.) At the time when jurisdiction attached, and when the contract was entered into, and till the work was, to a great extent, at least, performed under the contract, the whole constituted but one lot. The contract was entered into with reference to the condition of the lands bordering on the improvement, as they then existed; and, under the statute, when completed, the contractor was entitled to have the cost of the improvements " assessed upon the lots and lands fronting thereon;" (Sec. 8;) that is to say, upon the lots upon which the improvement contracted to be made then fronted. No subsequent change in cutting up the lots

could defeat the right of the contractor to have the expenses of the work assessed upon the lots fronting on the improvement, as they existed when the contract was made. If this were otherwise, the owner, by his own act, without the assent of the contractor, would be able to take away a part of the property upon which he relied, and upon which he was entitled to rely, to secure payment, when he entered into the contract. The jurisdiction of the Board of Supervisors attached upon the existing state of things; and the contract must be presumed to have been entered into in view of that fact. The jurisdiction, when it once attached, extended through all subsequent proceedings regularly had, till the assessment was made and collected. That jurisdiction could not be ousted by the act of a lot owner. In this case, there can be no doubt that had no conveyance been made by Thomas S. Miller to C. W. Miller, and none by the Commissioners of the Funded Debt to either of the Millers after the commencement of the work, and before the making of the assessment, the whole would have been liable to be assessed as one lot. If, then, it is not now liable to be so assessed, it is simply in consequence of the act of the owners performed since the contract was made, without the assent of the contractor or Board of Supervisors, and which they could not have prevented, in conveying a narrow strip of three feet along the whole line of the improvement to a third party, and thereby cutting off the whole of the remainder from a frontage on the street. If this could be done, the same result can be accomplished by conveying one inch of the frontage; and in all cases, the right of the contractor to have the expenses of an improvement assessed upon anything valuable can be defeated by the act of all the owners of lands fronting on the improvement conveying to some stranger one inch in width along the entire frontage. The statute never contemplated any such absurdity, and it would be a mockery of law and justice for a Court to trifle with the obligations of contracts by sanctioning any such view of the law. It may be true, as respondents' counsel suggests, that a party

may sell out his land for the purpose of avoiding the payment of assessments; but if this be so, the assessment, if regularly made, will still attach itself to the land into whosesoever hands it may go, and payment must be made out of the proceeds of a sale, if the party who succeeds to the ownership declines to pay it himself.

We are of opinion that when a party enters into a legal contract to improve a street, he thereby acquires a right, under his contract, to have the assessment for the expenses of the work, when completed, made upon the lots fronting on the improvements as they existed at the time the jurisdiction of the Board of Supervisors over the subject matter attached under the statute, and that the owner of a lot can no more defeat this right as to a large, and really the only valuable portion of the lot, by subsequently conveying a narrow strip bordering on the improvement, than he can by conveying the whole as a single lot to another party. The whole lot as it existed when the jurisdiction of the Board of Supervisors attached, is liable to be assessed upon the completion of the work, no matter who owns it, or what subdivisions, fraudulent, fanciful, or otherwise, may subsequently have been made by the owner.

In this case, the lot described in the complaint was liable to be assessed as to all persons having any interest in it, as one lot, when jurisdiction attached, and the contract was made, and the subsequent acts of the parties found by the Court did not relieve any portion of it from such liability. It was assessed to unknown owners, and the Court below found, that at the time of making the assessment the owners were unknown to the Superintendent of Streets. The assessment is, therefore, valid as to the interest of defendant, Thomas S. Miller.

Under the view taken, it is unnecessary now to determine the question whether a party can, under any circumstances, or at any time, convey a narrow strip of a few inches or a few feet in width, fronting on the street, in such a manner as

12

to protect the inner lands from liability to assessment, and since there can now be no personal liability, thereby practically defeat the power of the Board of Supervisors to improve streets, by withdrawing from assessment the only property of a value adequate to defray the expenses of the work.

That portion of the judgment from which the appeal is taken is reversed, and the District Court directed to enter a judgment declaring a lien upon and directing a sale of the entire premises described in the complaint, or so much thereof as may be necessary for the purpose, and apply the proceeds to the satisfaction of the amount assessed and found due, and the costs, and the remittitur is directed to issue forthwith.

SPRAGUE, J., dissenting.
M. Justice RHODES did not express an opinion.