PHILIP F. STIFEL, Respondent, v. REBECCA W. BROWN ET AL., Appellants.

**St. Louis Court of Appeals, January 4, 1887.**

1. SPECIAL TAXES—SALE TO DEFEAT.—A colorable sale of a strip off the front of a duly platted and recorded city lot, made with the intent of saving the residue of the lot from the burdens of a special tax about to be assessed against it for the improvement of the street on which the lot fronts, will not operate to exempt such residue.

2. —— RULE AS TO DEPTH OF LOT—PERCENTAGE OF TAX.—The charter provision of St. Louis, that the special tax shall not exceed twenty-five per cent. of the assessed value of the lot, calculating a

depth to such lot of one hundred and fifty feet, means that, if the lot be deeper than one hundred and fifty feet, only that depth shall be considered in determining whether the tax exceeds twenty-five per cent. of its assessed value, and does not mean that a lot of less than that depth shall bear a smaller tax than one of that depth.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

WILLI BROWN, for the appellants: There is no privity of contract between the parties, and the lien does not arise from any equities between the parties, and is not enforceable in equity. *Prendegast v. Richards*, 2 Mo. App. 193. A special tax bill has no validity or existence, save as a lien on the land charged by it. *Seibert v. Copp*, 52 Mo. 182 ; *Anderson v. Holland*, 40 Mo. 600.

GEORGE A. CASTLEMAN, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action upon a special tax bill for the cost of reconstructing with granite pavement a portion of Plum street in the city of St. Louis. The ordinance (No. 12,426) which authorized the work was passed March 27, 1883. The contract under which the work was let was executed April 17, 1884. The special tax bill, which was issued to the contractor and which is the foundation of this action, is dated September 17, 1884. The lot of ground against which the tax bill is issued is described therein as "lot number twelve, in city block number one, said ground having an aggregate front of twenty-two and five-tenths feet, by a width of ninety-nine and twenty-nine one-hundredths feet, bounded north by Climer, east by Commercial street, south by Plum street, and west by First street." It is thus seen that the improvement for which this special assessment is made against the lot, extends along the flank of the

lot throughout its entire length, and that, in respect of this improvement, regarding the lot as fronting upon it, the lot had a *depth* of twenty-two and five-tenths feet only. The manner in which this assessment was required to be made was prescribed by the fourth and fifth sections of the ordinance, in the following language:

"Section 4. The cost of the foregoing work, and all proper connections and intersections required, shall be charged as a lien upon the adjoining property fronting or bordering upon the improvement herein provided for, and shall be paid by the owners thereof, except as hereinafter provided. When said work is completed the president of the board of public improvements shall compute the cost thereof and levy and assess the same as a special tax against each lot of ground chargeable therewith, in the names of the owners thereof respectively, in the proportion that the linear feet of each lot fronting or bordering on said improvement bears to the total number of linear feet of all the property chargeable with the special tax aforesaid, and shall make out and certify to the comptroller, on behalf of the contractor, bills of such cost and assessment accordingly, as required by law.

"Section 5. Whereas, the estimated cost of the foregoing work and all proper connections and intersections, required as provided for by this ordinance to be assessed against some of the lots fronting or bordering on the aforesaid improvements, amounts to more than twenty-five per centum of the assessed value of said lots, therefore, the amount in excess of twenty-five per centum shall be paid by the city of St. Louis; and the sum of five hundred and thirty-eight dollars is hereby appropriated on account thereof, payable out of the fund set apart for street reconstruction."

The president of the board of public improvements complied with the above requirements of the ordinance in making this assessment. The tax bill shows on its face that the total cost of the work was first ascertained,

and then the rate per front foot of the frontage taxed, making the total tax against this frontage, $733.93; that the assessed value of the property was one thousand six hundred and ninety dollars, one-fourth of which would be $422.50; and that this sum, $422.50, was the amount assessed against the property in question, the excess, $311.43, remaining to be paid by the city. It thus appears that the assessment was made in substantial conformity with the ordinance. It is consequently a good assessment, unless the ordinance itself is invalid, or, unless the right to make the assessment has been defeated by the act of the original owner of the lot, Mrs. Brown, questions which will be hereafter considered.

I. On the twelfth day of April, 1884, which, it will be perceived, was before the contract under which the work was done was entered into, but after the ordinance authorizing it was passed, the defendant, Rebecca W. Brown, conveyed to her mother, Mrs. Willi, a small portion of the lot in controversy, three feet in width, extending from one end of the lot to the other, on the south side of it along its entire margin, on Plum street. On the fifteenth of March, 1885, Mrs. Willi conveyed this strip of land by warranty deed to Joseph T. Donovan. The consideration paid by Mrs. Willi, and also by Donovan, was two hundred and ten dollars, which was seventy dollars per front foot, a sum less than the assessed value of the property, and considerably less than its market value. The parties to this conveyance and Mr. Willi Brown, son of Rebecca W. Brown, under whose advice it was made, all testified that it was an out and out sale. Mr. Donovan paid the money for it, and swears that he bought it because he thought it was a good investment. It appears that since the sale Mr. Donovan's proportion of the rent collected from the tenant of what was previously the whole lot has been collected by Mr. Willi Brown and regularly paid over to him. But Mrs. Brown's avowed object of the conveyance was to defeat the collection of this assessment in

part. The first deed was made to the mother of Mrs. Brown, without any previous bargain or consultation between her and Mrs. Brown; the grantee to whom the deed was made by Mrs. Willi was the real estate agent of Mrs. Brown; the whole thing was advised and manipulated by Mr. Willi Brown, the son and business agent of Mrs. Rebecca W. Brown, with the purpose on her part and on his part of defeating in greater part the collection of this assessment. We have no hesitation in holding the conveyance a mere sham, and of no validity whatever, so far as it might operate against the right of this plaintiff to collect his tax bill against the lot, against which it was originally assessed. The lot referred to in the ordinance is the platted and recorded lot existing at the time of the tax bill; and while it might be competent for the owner, by a valid conveyance made subsequently to the date of such an ordinance, to change the amount which could be assessed against property for such an improvement, yet we hold that no such effect can be ascribed to a deed which is made for this purpose and for no other.

II. The remaining question which is pressed upon our attention is, whether the ordinance, in so far as it undertakes to assess the cost of the improvement against the property, under what is known as the "front foot rule," to the extent of twenty-five per cent. of its taxable value, the city bearing the remainder of the charge, is valid, in view of the following provision of the charter of the city: "And the paving, curbing, guttering, sidewalks, and the materials for the road ways, the repairs of all alleys and sidewalks, shall be charged upon the adjoining property as a special tax, and collected and paid as hereinafter provided. Whenever the estimated special taxes to be assessed against any property shall in the aggregate amount to more than twenty-five per cent. of the assessed value of said property, calculating a depth to such property of one hundred and fifty feet, then the assembly shall provide out of the general reve-

nue for the payment of the amount in excess of the said twenty-five per cent." 2 Rev. Stat., p. 1609 ; Charter of St. Louis, article 6, section 18. We understand the contention of the defendants to be that, under this provision assessments are to be made against "property and not against lots, and that in making an assessment the president of the board of public improvements must measure back from the line of the lot bordering on the improvement to a depth of one hundred and fifty feet, and ascertain the amount at which the entire property has been assessed within the area formed by the line so ascertained, the front line of the lot facing on the improvement, and two lines perpendicular to these two lines and coincident with the boundary lines of the sides or ends of the lot, and hence, perpendicular to the line of the improvement." It is perceived that great difficulties would attend the application of such a rule, and that it might not work out the even justice among the lot owners who had to bear the burden of these improvements which it is supposed it would. It would require the apportionment of the tax assessed for the improvement of a certain frontage, among several different lot owners, and the owner of the lot farthest from the improvement would have to bear as large a proportionate share of the burden as the owner next to it. Suppose that, in going back for the purpose of obtaining such an area, the line measured one hundred and fifty feet north of Plum street, and parallel with it, should take in one foot only of the margin of the lot of some particular owner, in what manner would the assessment be made against him? Suppose, in the case of an improvement in front of a lot, instead of upon the flank of it, as here, the lot should extend back one hundred feet to an alley, in what manner would the assessment be made? Would the area taken into the estimate cross the alley so as to assess some of the charge upon the owner of a lot fronting in an opposite direction, upon another street, upon another side of the block? These and other difficulties have no

doubt been thought over by the able men who have had in charge the framing of schemes for municipal improvement in the various cities of this state, and who must be supposed to have performed their duty with the desire of equalizing the burden upon different property holders, as far as practicable.

It may be conceded, however, that the argument *ab inconvenienti* is not an argument which can stand in the way of giving to the words of the charter the interpretation which they plainly require. There is force in the argument that the clause above quoted from the charter, which provides for the making of such assessments against "the adjoining property," and which speaks of "any property," instead of providing for making the assessments "on the adjoining lots," which was the provision of the charter of 1855, intended to change the principle of the assessment; and we confess that we would have great difficulty in coming to any conclusion as to what the unskillful draughtsmen of this particular provision in the present city charter did mean. But in view of the fact that what is known as " the front foot rule" has been the principle upon which similar assessments have been made, not only in St. Louis, but in other cities of this state for many years, and that this principle has been approved by the supreme court in numerous decisions (*Farrar v. St. Louis*, 80 Mo. 394, and cases cited), we feel clear that, if the authors of the present charter had intended to change this rule, they would have said so in explicit terms. We are of opinion that the above clause of the charter was intended to mean no more than this : that where the estimated cost of the improvement exceeds twenty-five per cent. of the assessed value of the adjoining lot, the city shall pay the excess ; provided that, in case of lots more than one hundred and fifty feet in length, measuring back from the line of the improvement, the amount which shall be charged upon the lot shall be twenty-five per cent. of that portion of the assessed value of the lot which the

one hundred and fifty feet bears to the entire length of the lot. In other words, in case of an assessment for a front improvement against a lot of two hundred feet in depth, the lot would not be required to bear more than twenty-five per cent. of three-fourths of its assessed value. It follows that, in our opinion, the clause of the charter which fixes this one hundred and fifty feet limitation has no application to a case where a lot extends backward from the front line of the improvement less than one hundred and fifty feet, as in this case. In such a case the assessment is correctly made, if the amount charged against the lot and for which the tax bill is issued does not exceed twenty-five per cent. of its assessed value.

III. It necessarily follows from the foregoing that the tender made by Mr. Donovan of an amount equal to twenty-five per cent. of the assessed value of the three foot strip was futile. In the first place, there was no evidence that the three foot strip had ever been assessed separately for taxation. If it were so assessed, it might be found to be worth actually more or actually less than its proportion, according to its frontage on First street, of the entire lot of twenty-two and five-tenths feet front.

IV. The only other objection which it seems necessary to consider relates to the form in which the judgment was entered. It contains the recital that the defendants, Rebecca W. Brown and Lucinda Willi, are indebted to the plaintiff in the sum named in the tax bill with interest, and then proceeds to award a special execution against the lot described in the tax bill. We see no error in this recital, so far as Mrs. Willi is concerned. At the time when the tax bill was issued, from which date it became a lien on the property, the three foot strip which had been conveyed to her by Mrs. Brown stood of record in her name, the conveyance by her to Donovan having been subsequently made. Nor do we see that it is necessary for the judgment to contain the recital that Donovan is indebted for any of this

sum. The judgment ought not to recognize the validity of this conveyance at all. It is enough that Mrs. Willi and Mr. Donovan have been made parties to the suit, so that their rights, if any they have, are not affected without their notice. It is not necessary that the judgment should recite that either one of the defendants is indebted to the plaintiff. Such a recital is not true in point of law. There is no privity of contract between the plaintiff and either one of the defendants. The charge is not against any person, but against the property simply. No general execution, even for costs, can be had against any of the defendants personally. It follows that so much of the judgment of the circuit court as recites that Mrs. Brown and Mrs. Willi are indebted to the plaintiff, etc., may be rejected as mere surplusage.

The judgment will be affirmed. It is so ordered. All the judges concur.