UNION NATIONAL BANK OF SPRINGFIELD, RESPONDENT, v. GEORGE H. MOBLEY ET AL., APPELLANTS.—78 S. W. (2d) 512.

Springfield Court of Appeals.   December 24, 1934.

Rehearing denied February 4, 1935.

*Alfred Page* and *Val Mason* for appellant.

*Coltraine & Coltraine* for respondent.

BAILEY, J.—This is an action for the enforcement of the lien of two special and separate tax bills, issued by the City of Springfield, against certain real estate, for public improvements. The first one was issued in payment for pavement upon the roadway of Broadway Avenue from Grand Street south to Oak Street in the City of Springfield. The second was issued in payment for the construction of concrete curbing upon the same street. The proceedings leading up to the two improvements are of the same date and likewise the property involved is the same. The petition was in two counts, but the issues involved are identical. There is no controversy in regard to the facts, which are stated in respondent's brief, in part, as follows:

"The petition is in the usual form.

"The lien is sought to be enforced against a sixteen-acre tract of land owned by John Mobley until the date of his death, June 15, 1930, and since that time by his devisees. Broadway, the street improved, runs along the west side of this sixteen-acre tract. The answer of Helen Grosskreutz alleges that on June 15, 1930, prior to the issuance of the tax bills in question, John Mobley devised a tract 125 feet square in the northeast corner of said sixteen-acre tract to her, and that as this 125 foot tract did not adjoin Broadway Avenue at the time the special tax bills were issued, it was not abutting property and therefore was not subject to the lien of the tax bills.

"The evidence shows that on April 11, 1930, the City Council passed a resolution declaring the improvements for which said tax bills were issued necessary. No protest was filed, and on April 29,

1930, an ordinance was passed ordering the construction of concrete paving and integral curbing on said Broadway Avenue from Grand Street to Oak Street, a distance of 2452 feet. Said sixteen-acre tract had a frontage of 1226 feet on the improvement. On June 15, 1930, John Mobley died leaving a will in which he gave the above described 125 foot strip to appellant. This 125 foot tract included the dwelling house and all valuable improvements on the land. The regularity of the proceedings up to the date of the death of John Mobley is not questioned.

"The sixteen-acre tract, including said 125 foot strip, owned by John Mobley, abutted on the above mentioned part of Broadway Avenue at the date of this resolution and of this ordinance, both of which were passed before this death. The contract for both the curbing and paving was let to F. X. Baron on May 9, 1930, and his contract with, and bond to, the City entered into on that date. In this contract, the City agreed to pay the contractor in tax bills against the property abutting on said Broadway Avenue along the distance to be improved in proportion to the front foot thereof. The contractor commenced the work and had done a considerable part thereof prior to June 15, 1930, the date John Mobley died. An ordinance directing the issuance of the tax bills was passed by the city council on July 9, 1930, and the two bills in question was issued. Thereafter, the tax bills were assigned to the Union National Bank, the respondent herein.

"The appellant, Helen Grosskreutz, seeks to hold exempt from the lien of the tax bills the 125 foot tract, which she took under the will of John Mobley. Appellant's contention is that the devise of this land after the preliminary proceedings were taken and the work commenced but before the special tax bills were issued exempted or freed the said tract in the northeast corner of said sixteen-acre tract devised to appellant from liability for the payment of any part of the cost of said improvement. Respondent's contention is, and the trial court so found, that the resolution declaring the improvement necessary and the ordinance authorizing the work having been passed, and the contract and bond having been entered into, and the work partly performed before Mr. Mobley's death, a change in the ownership of any part of said sixteen-acre tract would not relieve the part of the land transferred from liability."

The trial court found the issues in favor of plaintiff and rendered its judgment accordingly. Defendant, Helen Grosskreutz is the sole appellant. While several assignments of error are contained in defendant's brief there is in fact but one point involved, namely that the trial court erred in holding that the tract 125 feet square in the northeast corner of the sixteen-acre tract, devised to Helen Grosskreutz, was not exempt from the lien of the special tax bills for the costs of the improvements in question.

Defendant Helen Grosskreutz bases her contention that the lien of the special tax bill did not attach to the tract of land devised to her by her father, upon the ground that the lien thereof, under the statute, did not attach until the tax bills for the improvements were issued and that since her father died and his will became effective some twenty-four days before the tax bills were issued, no lien attached to her property, which does not abut upon the improvements. The statute authorizing the city to issue special tax bills against property assessed for public improvements provides among other things that, ''Every such special tax bill shall be a lien against the property therein described from the date of its issuance, which lien, shall continue for a period of six years thereafter.'' [Sec. 6652, R. S. Mo. 1929.] There can be no question that by the terms of this statute the lien of the special tax bill does not become effective until its issuance. [Anderson v. Holland, 40 Mo. 600; Clapton v. Taylor, 49 Mo. App. 117; Everett v. Marston, 186 Mo. 587, 85 S. W. 540; Seibert v. Copp, 62 Mo. 186; Eagle Manufacturing Co. v. Davenport, 101 Iowa, 493, 70 N. W. 707; 44 C. J. 803, sec. 3412; 25 R. C. L. 187, sec. 100.]

Plaintiff in its brief does not dispute this rule of law based upon the statute but says, ''we do not claim that the lien attached before the special tax bill was issued, but we do say that changes of ownership in the land after the resolution declaring the work necessary had been passed and the contract for the improvement had been entered into with the contractor, it did not lie within the power of the owners to increase or decrease the amount of land that would be liable for the expense of the improvement.'' There are a number of cases cited in support of that proposition, among them being, Dougherty v. Miller, 36 Cal. 83; Douglass v. Cincinnati, 29 Ohio St. 165; In re Elizabeth Com'rs., 49 N. J. L. 488, 10 Atl. 363; City of St. Louis v. Meier, 77 Mo. 14; Stifel v. Brown, 24 Mo. App. 102; Stumpe v. City of Washington, 54 S. W. (2d) 731.

The three Missouri cases cited are bottomed on the theory that a conveyance of a narrow strip of land abutting upon the improvement made after the work has commenced but before the assessment is actually authorized or the tax bills issued, for the sole purpose of avoiding the assessment as to the remainder of the land, is fraudulent and void, being a mere sham and therefore of no effect. We find no Missouri case which holds for or against the proposition that a conveyance made without the earmarks of fraud, but for a legitimate purpose, must be considered as void in so far as the assessment is concerned, although the effect of such conveyance might be to remove from the lien of the tax bills, issued in payment of the improvement, a considerable and valuable portion of the land that was, at the time of the passage of ordinance declaring the improvement necessary, subject to the assessment. It is with such a situation we must

deal in the present case. There is no charge of intentional fraud. The will under which defendant Helen Grosskreutz claims title to part of the original tract abutting upon the improvements, was executed shortly before the City Council of Springfield commenced proceedings for the improvements. The testator died between the time the contract was let and the tax bills were issued. The question then is whether land constituting a part of a tract abutting upon an improvement, conveyed to a third person before the issuance of the tax bills creating the lien, but after the enactment of an ordinance authorizing the improvement, is nevertheless subject to assessment for the same, where no element of fraudulent intent is shown to exist.

In the case of Everett v. Marston, 186 Mo. 587, supra, a suit was brought for the specific performance of a contract in which the vendor agreed to convey the property free of all liens and encumbrances of every kind. The question arose as to whether or not special tax bills for improvements on a street abutting the property were a lien or incumbrance against the property involved in the contract. At the time the contract was entered into work had been commenced upon the improvement but the tax bills had not been issued. The Supreme Court, after reviewing a number of decisions, held that, "the implication of an encumbrance from the general scope of the charter provisions for the payment of special improvements cannot be upheld in the face of positive statutory or charter provisions fixing the date of the commencement of the lien." . . . "Our conclusion is that the covenant in the contract to make a deed free from liens and encumbrances did not obligate the defendant to pay these tax bills which were neither liens nor encumbrances when the contract was made, and the liability relates to the date of the contract which fixed the rights of the parties." [l. c. 602-3.] This case, as well as other Missouri cases cited by defendant, do not, in our opinion, reach the point here involved. The question of what property is subject to the assessment for the improvement is not discussed. We agree with plaintiff that a distinction should be made between the property subject to the lien of the tax bill and the date when the lien itself attaches. In the Everett case there was no holding that the property involved in the contract was not subject to the special tax bill, but on the contrary the point decided was whether the vendor or vendee should pay the tax under the contract of purchase.

We have reached the conclusion that property abutting upon an improvement at the time the improvement is authorized, should be held subject to the lien of the special tax bill thereafter issued upon completion of the improvement, irrespective of any subsequent conveyances by which a part of such abutting property, all of which was originally assessable, may have been conveyed to another. We may suppose, for example, that the owner of abutting property conveys the whole tract to an innocent purchaser after the improvement

is commenced but before the special tax bill is issued, and that such conveyance is made for a legitimate purpose, with no charge of fraud. We think no one would say such property could escape the lien of the special tax bill afterward issued, although the lien had not attached at the time of the conveyance. The same is true when a small strip is sold off the front of the property for a fraudulent purpose, as we have heretofore observed. It therefore follows that the time when the lien of the special tax bill becomes effective does not decide what property shall be subject to the lien. The date when the lien becomes effective, fixed by statute, governs only questions which might arise as to priorities, warranties, covenants, statutes of limitation and the like, but was never intended, we think, to permit property originally subject to the lien of the special tax bill to escape its just burden by conveyances *ad interim*. [44 C. J. 592, sec. 2996.] This holding is in apparent conflict with a part of the holding in the case of Eagle Manufacturing Company v. Davenport, 101 Iowa 483, 70 N. W. 707, cited by defendant, in which it was held that the conveyance of a two-foot strip made after the letting of a contract for paving a street upon which such strip abutted, for the purpose of avoiding the paving assessment on the balance of the property, was void for the purpose of the assessment; but that the sale thereafter of another portion of the tract involved, adjoining the strip, for a legitimate purpose, was not void. It was further held, however, that because the grantee in the latter deed had a guilty knowledge as to the purpose of the previous conveyance, he took with notice and therefore the land was subject to the lien of the assessment. The decision is based entirely on the question as to whether or not the conveyances were fraudulent. We say the result is the same in either case. It is obvious that when a contract is let for a public improvement, as here, reliance is placed upon the fact that certain property abutting the improvement stands good for the cost thereof, and we are unwilling to agree that any of such property may be relieved of its proportionate share of the burden by subsequent conveyances, whether in good faith or otherwise. In Dougherty v. Miller, supra, the Supreme Court of California said:

"It may be true, as respondents' counsel suggests, that a party may sell out his land for the purpose of avoiding the payment of assessments; but, if this be so, the assessment, if regularly made, will still attach itself to the land into whosesoever hands it may go, and payment must be made out of the proceeds of a sale if the party who succeeds to the ownership declines to pay it himself. We are of opinion that when a party enters into a legal contract to improve a street, he thereby acquires a right under his contract to have the assessment for the expenses of the work when completed made upon the lots fronting on the improvement as they existed at the time the jurisdiction of the board of supervisors over the subject-matter at-

tached under the statute, and that the owner of a lot can no more defeat this right as to a large and really the only valuable portion of the lot by subsequently conveying a narrow strip bordering on the improvement, than he can be conveying the whole as a single lot to another party. The whole lot as it existed when the jurisdiction of the board of supervisors attached is liable to be assessed upon the completion of the work, no matter who owned it or what subdivisions, fraudulent, fanciful, or otherwise, may subsequently have been made by the owner." [36 Cal. 83.]

To the same effect is the case of Douglass v. Cincinnati, supra.

We think the reasoning in these cases sound and agree with the conclusions reached. The judgment is accordingly affirmed. *Allen, P. J.,* and *Smith, J.,* concur.