**CITY OF JACKSON ex rel. Robert HOFFMEISTER and Louis A. Loos, d/b/a Loos & Hoffmeister, (Plaintiffs) Appellants,**

v.

**Howard LaCHANCE, Verla LaChance, Raymond Reiminger, Joan Reiminger and Jackson Savings and Loan Association, (Defendants) Respondents.**

No. 31469.

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1963.

Buerkle & Lowes, Albert C. Lowes, Jackson, for appellants.

Paul A. Mueller, Jr., Jackson, for respondents.

WOLFE, Judge.

This is an action on a special tax bill for a street improvement. The plaintiffs sought to impose a tax on the whole of a lot in the City of Jackson, Missouri. Defendant LaChance claimed that he owned only a part of the lot, and defendant Reiminger made a like answer. The Jackson Savings and Loan Association asserted that their mortgage was only on the part owned by LaChance. LaChance claimed that he had paid the amount that he owed for the street improvement. The plaintiffs asserted by reply that LaChance and Reiminger had conspired to defraud them by transferring part of the property to LaChance so that they would not have to pay the full tax bill.

There was a finding and judgment by the court in favor of Howard LaChance and his wife and the defendant loan company. There was a finding against Reiminger and his wife as to the part of the tax on the portion of the lot that he claimed to own.

The facts of the matter are that prior to May 25, 1959, Reiminger owned all of Lot 14, Block 6 of Daley Heights Subdivision in Jackson, Missouri. The lot was located on the northwest corner of Rosamund Street and Corinne Street. Rosamund runs in a generally eastwardly and westwardly direction and is intersected by Corinne, which runs in a northwestwardly direction and forms a 52 degree angle with Rosamund Street at the point of intersection. Thus the lot in question is triangular in shape. It forms a right triangle. The street which was paved and for which the tax ·bill was issued is Rosamund Street. The south side of the triangular lot extends · along this street for a distance of 130.56 feet. The western boundary of the lot extends northwardly at a right angle to its southern boundary on Rosamund Street for a distance of 160 feet and ends at the point where the western line of the lot touches the western side of Corinne Street. The east side of the triangle follows the western side of Corinne Street down to the point where Corinne Street intersects Rosamund. This line along Corinne Street is 204.48 feet in length, and forms the hypotenuse of the triangle.

The defendant Reiminger, who built and sold houses, had·built a house upon the lot

in the year 1958. In February of 1959, there was a meeting at which the paving of Rosamund Street was discussed. Mr. Reiminger attended the meeting. Defendant LaChance, who was contemplating marriage in 1959, looked at Reiminger's house and decided to buy it. As stated, Reiminger's lot fronted 130.56 feet on Rosamund Street, which at that time was not paved. Reiminger did not ask LaChance to buy the whole lot, but instead sold him a rectangular piece of it fronting 60 feet on Rosamund and having a depth of 85.37 feet. This left title in Reiminger to a triangular portion fronting 70.56 feet on Rosamund and a somewhat smaller triangle, to the north of the piece sold to LaChance, fronting on Corinne Street.

The plaintiff contractors paved Rosamund Street in 1960, and by this action seek to collect a special tax bill for the work by having the tax levied as one charge on all of Lot 14, including the part owned by LaChance and the part owned by defendant Reiminger. The part owned by Reiminger is too small to build upon and could not be sold for a sum sufficient to satisfy the part of the tax chargeable to it alone, on a front footage basis.

There were meetings held to discuss the paving of Rosamund before LaChance bought the house and the rectangular portion of Lot 14 fronting for 60 feet on Rosamund. LaChance testified that the possibility of Rosamund being paved may have been mentioned to him before he bought the lot, but he had no recollection of it. He knew that it was unpaved, but many streets in Jackson were. He was not familiar with the neighborhood at the time he purchased the house, and he knew of no plans to pave Rosamund. He had no agreement with Reiminger other than the purchase of the house on a lot fronting 60 feet on Rosamund. He received his deed on May 25, 1959, and it was recorded on June 3, 1959. He financed his purchase through the Jackson Savings and Loan Association. Before Reiminger sold the lot to LaChance, he asked the city engineer to draw up the de-

scription to be put in the deed to LaChance, but the engineer said that he would not do it, and the description and deed were prepared by Reiminger's attorney.

The city engineer and the plaintiffs who were the contractors knew that there had been a sale of a part of a lot to LaChance, and that the remaining portion fronting on Rosamund Street for 70.56 feet was not worth the amount that would be assessed against it for the paving. Because of this, when the city first advertised for bids, the plaintiff contractors offered no bid on the work. This publication was pursuant to an ordinance passed September 21, 1959. There were no other bids on the work, so the city engineer increased his estimate on the paving cost by taking into consideration the fact that some of the land fronting on Rosamund, including that part of the lot still in Reiminger's name, was worthless. A new ordinance was passed on October 19, 1959, and the plaintiffs then bid on the paving, allowing for a loss on certain tax bills against worthless property, including Reiminger's.

The city engineer had assured the plaintiff contractors that only one special tax bill would be issued on the whole of Lot 14, and at first only one was issued. The plaintiffs attempted to assign the tax bill to their bank, but the bank would not accept it. The plaintiffs then requested that two tax bills be issued, one against the part of the lot owned by LaChance, and the other against the part still owned by Reiminger. This was done, and LaChance paid the tax bill issued against his portion of the lot. Then another tax bill was issued covering the whole lot, and that is the one here in suit, and it was put in evidence. The suit seeks to credit the payment made by LaChance, and have the part owing on the Reiminger property declared a lien upon the whole lot.

LaChance testified that after the argument arose over taxing all of the land as one parcel, Reiminger had told him that he would deed him the balance of the lot if

he wanted it. He also testified that he had kept the grass cut on Reiminger's property because the neighborhood children played there. He had a dog house and had planted some flowers on part of Reiminger's property.

As stated, the court found for defendants LaChance and his wife and gave judgment for the plaintiffs only against the part of the lot owned by Reiminger and his wife. It is contended here that the trial court erred, in that it did not give "prima facie effect" to the tax bill put in evidence. We are cited to Section 88.854, V.A.M.S.1949, which in part provides: "The special tax bills shall, in any action thereon, be *prima facie* evidence of the regularity of the proceedings for the special assessment, of the validity of the bill, of the doing of the work and of the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bill."

█ The words "prime facie evidence" of course only mean such evidence which is in law sufficient to establish the fact, and if not rebutted it remains sufficient to support a judgment upon the fact so established. Here we have evidence that rebuts the prima facie evidence. If that evidence convincingly contradicts the recitations of the special tax bill, then the tax bill no longer establishes that which it purports to state. The essential evidence in rebuttal is fully set out above.

It is the further contention of the plaintiffs-appellants that the evidence does not rebut the tax bill, but instead shows a conspiracy between Reiminger and LaChance to evade the lien of the tax upon the entire lot. We are cited to Stifel v. Brown, 24 Mo.App. 102, which dealt with a situation wherein a strip of land, three feet in width, adjoining an improved street and extending the full length of the improvement, had been conveyed so that none of the lot sought to be charged fronted upon the improved street. The court held that this was an obvious sham to avoid collection of the tax bill against the whole lot.

A similar case, also cited, is Stumpe v. City of Washington, Mo.App., 54 S.W.2d 731. That case had to do with the transfer of a seven-foot strip to a member of the family. This strip extended for 66 feet along the improved street and was clearly an effort to evade having the bill taxed against the whole lot.

The transfer in both of the above cases is in no way similar to the sale made to LaChance. The transfer in those cases was made to exclude all of the valuable portion of the lot from all of the tax imposed.

One other case cited is Union Nat. Bank of Springfield v. Mobley, 228 Mo.App. 1235, 78 S.W.2d 512. The facts in that case, as to the land conveyed are slightly similar to the facts before us. There the land sought to be charged was a 16-acre tract extending for 2,452 feet along the improved street. A portion of the land extending for 125 feet along the street was devised by will to a daughter. A dwelling house and all other improvements of any value were upon the land devised to the daughter. She sought to have her land taxed separately from the whole tract. Her father did not die until after the ordinance to improve the street had been passed and the contract had been let for the improvement. The court held that the entire tract should be taxed as one.

█ The facts there were essentially different from those before us. Here a conspiracy is charged. It obviously takes at least two to conspire, and according to the testimony of LaChance he had only one interest in dealing with Reiminger, and that was to buy the 60-foot lot with a house on it. No ordinance had been passed to pave Rosamund at the time he made the purchase. The city engineer and the contractors knew, before the ordinance was passed, that the sale had been made to LaChance. The contractors knew that the land left in Reiminger's name was not

worth the tax bill that would be assessed against it by reason of the improvement. They allowed for a loss on this stretch of the improvement when they made their bid. The city engineer had made a similar allowance in his estimate of the cost of the improvement. The contractors therefore suffered no loss by reason of the sale to LaChance. Neither was there any conspiracy proven, if LaChance was a credible witness. His credibility was for the trial court to determine. The transfer was a valid sale, openly made, prior to the ordinance, known to all parties concerned, and none of the parties to this action suffered any loss therefrom.

The judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.