## EVERETT v. MARSTON et ux., Appellants.

### Division Two, February 21, 1905.

1. **SPECIAL TAXBILLS: When Liens.** Special taxbills issued under section 18 of article 9 of the Kansas City charter are not liens on the adjoining property or property in a special tax district until they are issued and receipted for to the board of public works.

2. ———: ———: **Contract to Purchase Land: Specific Performance.** In a contract for the sale of city lots the seller agreed "to pay all special taxes and assessments which are now liens on said property and all installments of park and boulevard assessments, which are now due, and all subsequent taxes are to be assumed and paid by the buyer," and at the close of the instrument under the contractors' signatures was added the clause, "Seller agrees to pay all paving taxes in full." The property was at the corner of Oak and Thirty-first streets. Thirty-first street had been paved sometime previous, and an installment taxbill issued against the lots, and one installment was still unpaid at the date of the contract, but was not due until sometime later. Before the execution of the contract Oak street had been paved, and after its execution a taxbill for this paving was issued. About the same time a granitoid sidewalk was laid in front of the lots, and after the execution of the contract a taxbill for that was issued. *Held*, that, under the charter of the city which provided that every special taxbill "shall be a lien upon the land described therein, upon the date of the receipt to the board of public works therefor," the taxbills issued for the paving of Oak street and for the sidewalk were not "liens on said property" at the time the contract was executed, and hence the seller did not agree to pay them, but they were to be paid by the buyer. *Held*, also, that the seller by the clause, "Seller agrees to pay all paving taxes in full," did not agree to pay the paving taxes on Oak street, which were not then due, the taxbills for which had not been issued, for those taxes were not then liens. *Held*, also, that, by the clauses, "The seller agrees to pay all installments of assessments now due" and "all subsequent taxes are to be paid by the buyer," standing alone, the buyer obligated himself to pay the remaining installment of the taxbill issued against Thirty-first street, because that installment was not "due" at the time the contract was executed, but this clause was modified by the words, "Seller agrees to pay all paving taxes in full," which was then a lien, and hence the seller agreed to pay that installment.

3. ———: ———: ———: ———: **"Clear of Encumbrances."** The contract for the purchase of the city lots further provided that the seller would "execute and deliver a good and sufficient deed to the lots properly executed, free and clear of all liens and encumbrances of every kind excepting only such as are to be assumed by the buyer thereunder." *Held,* that, although the street had been paved under an ordinance which charged the cost thereof against the lots, yet as the taxbills therefor had not been issued and receipted for to the board of public works at the time the contract was executed, the obligation was not placed on the seller by the agreement to convey them "clear of all encumbrances" to pay those taxbills when issued. A taxbill which has not ripened into a lien is not an encumbrance. The work is not an encumbrance independent of the lien.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED (*with directions*).

*Flower, Peters & Bowersock* for appellants.

(1) A taxbill for street improvements issued under the charter of Kansas City is not a lien until receipted for to the board of public works. Art. 9, sec. 18, charter of Kansas City; Cooley on Taxation (2 Ed.), 444; Jaicks v. Sullivan, 128 Mo. 177; Inhabitants of Houstonia v. Grubbs, 80 Mo. App. 433; Smith v. Barrett, 41 Mo. App. 460. (2) Nor is it an incumbrance or charge of any kind before it becomes a lien. Cooley on Taxation (2 Ed.), 447; McQuiddy v. Gates, 69 Mo. App. 156; Seibert v. Copp, 62 Mo. 182; Cadmus v. Fagan, 4 Atl. 323; Dowdney v. Mayor, 54 N. Y. 186; Harper v. Dowdney, 113 N. Y. 644; Tull v. Royston, 30 Kan. 617; Langsdale v. Nicklaus, 33 Ind. 289; Jones v. Schulmeyer, 39 Ind. 119; Lindsey v. Eastwood, 40 N. W. 455. (3) Where a special provision is made in a contract to cover the taxes, it must prevail over a general provision as to liens and incumbrances. Miller v. Wagenhauser, 18 Mo. App. 11. (4) Until it becomes a lien, compensation for street improvements

is not a "paving tax." Sheehan v. Hospital, 50 Mo. 155, and cases cited under points 1 and 2. (5) An admission by an attorney during the trial of a cause is conclusive on his client. Nichols v. Jones, 32 Mo. App. 657; Moling v. Barnard, 65 Mo. App. 600; Wilson v. Spring, 64 Ill. 14; Central Branch v. Shoup, 28 Kan. 394.

*Willard P. Hall* for respondent.

(1) As to the alleged alteration of the written contract in suit: 1. The answer was silent as to any alteration of said contract. No alteration was apparent upon the face of the contract, and it was, therefore, necessary for defendants both to allege and to prove any alteration. Shelton v. Reynolds, 111 N. C. 525; Matorsy v. Foote, 9 Tex. 610; Land & Lumber Co. v. Tie Co., 87 Mo. App. 167; State ex rel. v. Chick, 146 Mo. 645. 2. There was no alteration. The alleged alteration, consisting of the added words in writing, "Seller agrees to pay all paving taxes in full" (a) was made before either Fidelity Trust Company or plaintiff had signed the contract; (b) and said addition was made by Fidelity Trust Company's agents, and therefore, defendants' subagents, Crutcher & Welsh, with authority. 3. The existence of said words in the contract was known both to the real owner of the property, the Farmers' Loan & Trust Company, and to the Fidelity Trust Company, its agent, as early as August 24, 1901. Neither of them made any objection on that account, they retained their copy of the contract, and to this day they have kept the $100 paid by plaintiff as part of the purchase-money. Thereby, if such words were inserted in the contract by Crutcher & Welsh without authority in the first instance, said owner and its agent ratified such insertion by Crutcher & Welsh. Yocum v. Smith, 63 Ill. 321; Rennville Co. v. Gray, 61 Minn. 242; Pulliam v. Withers, 8 Dana (Ky.) 98; Stewart

v. Bank, 40 Mich. 348; Cameron v. Grigsby, 116 Ill. 151; Emerson v. Opp, 9 Ind. App. 581; Glover v. Green, 96 Ga. 126; Henry v. Heeb, 114 Ind. 275; Reed v. Morton, 24 Neb. 760; Bank v. Umrath, 42 Mo. App. 525. 4. As to the alleged admission by plaintiff's counsel that the added words were inserted after the Fidelity Trust Company had signed the contract: (a) The alleged admission was in the form of a remark made by plaintiff's counsel, and did not have the force nor effect of an admission of the fact stated. 1 Thomp. on Trials, sec. 201; Ferson v. Wilcox, 19 Minn. 388; McKeen v. Gammon, 33 Mo. 187. (b) The remark of plaintiff's counsel was made in relation to an objection made by opposing counsel to the introduction of the contract in evidence on the alleged ground of alteration; plaintiff's counsel explained that they would show that the alteration was made by Crutcher & Welsh, and defendants' counsel asked if the alteration was not made after the Fidelity Trust Company signed the contract, and plaintiff's counsel answered "yes." This was solely for the purposes of the objection made by defendants' counsel, and not for the purpose of dispensing with proof of the fact in question. Henry C. Brent who signed the contract for the Fidelity Trust Company had just testified that the alteration was made after he signed the contract, and counsel for defendants for the purpose of giving force to their objection to the introduction of the contract in evidence asked the question if it was not admitted that the alteration was made after the Fidelity Trust Company signed the contract, as testified by Mr. Brent, in order to show to the court that plaintiff did not propose to contradict Mr. Brent's testimony in that regard. (c) The remark of plaintiff's counsel was erroneous, and was made in ignorance of the real truth. . Defendants took no action based upon said remark, and the court would certainly have permitted plaintiff's counsel to have withdrawn the remark had such permission been asked. The action of

the court and of defendants in permitting plaintiff, after the remark was made, to prove the fact to be contrary to said remark, was equivalent to consent by them both to plaintiff's withdrawal of said remark. Defendants having at the trial treated the remark as not an admission of the fact stated, having treated the fact as at issue, having consented to plaintiff's introduction of evidence that the fact was not as stated in said remark, can not now in this court for the first time take the position that said remark was a binding admission. Estes v. Nell, 163 Mo. 387; Adair v. Matte, 156 Mo. 496; Fitzpatrick v. Weber, 168 Mo. 562; Fehlig v. Busch, 165 Mo. 144; Raming v. Railroad, 157 Mo. 477; Merrielees v. Railroad, 163 Mo. 470; Farrar v. Railroad, 162 Mo. 469; Davis v. Watson, 89 Mo. App. 15; Kemp v. School District, 84 Mo. App. 680; Lumber Co. v. Calhoun, 89 Mo. App. 209; State to use v. O'Neill, 151 Mo. 67; Feary v. O'Neill, 149 Mo. 467.　(2)　As to the construction of the contract: 1. The contract is to be construed in the light of the circumstances under which it was executed, and for the purpose of ascertaining the real intention of the parties. 17 Am. and Eng. Ency. of Law (2 Ed.), 21-22; Crawford v. Elliott, 78 Mo. 497; Belch v. Miller, 32 Mo. App. 387; Patterson v. Camden, 25 Mo. 13; Ellis v. Harrison, 104 Mo. 270. 2. The evidence was absolutely conclusive that both defendants' agent, Welsh, and plaintiff intended by the written words to protect plaintiff against payment of the cost of the improvements on Oak street, and to obligate the seller to make such payment. The words themselves, "Seller agrees to pay all paving taxes in full," do not refer to any particular paving taxes, and, therefore, it was proper by parol evidence to explain what paving taxes were meant, and to identify such taxes. There was here a latent ambiguity, which is always open to parol explanation. 2 Am. and Eng. Ency. of Law (2 Ed.), 289, 295, 296; Streeter v. Seigman, 48 Atl. 907; Miles v. Miles, 30 So. 2, 78 Miss. 904; Fruit Growers

Assn. v. Packing Co., 134 Cal. 21; Matthews v. Robertson, 111 Wis. 324; Nurford v. Railroad, 70 Tenn. (2 Lea) 393; Longfellow v. McGregor, 56 Minn. 312; Fruit Co. v. Galeabashi, 111 Fed. 125; Mariner v. Rogers, 26 Ga. 220; Doughtry v. Boothe, 94 N. C. (4 Jones' Law) 87; Woodfair v. Sluden, 61 N. C. 200; Smith v. Wood, 133 Ind. 221; Ins. Co. v. Neiberger, 74 Mo. 172; Van Ravenswaay v. Ins. Co., 89 Mo. App. 77; Broughton v. Null, 50 Mo. App. 231; Wolfert v. Railroad, 44 Mo. App. 330; Emory v. Dyce, 70 Mo. 537; Ellis v. Harrison, 104 Mo. 270; Gill v. Ferrin, 52 Atl. 558. 3. Under the contract the seller was bound to pay all incumbrances except the taxes of 1901, and subsequent years, and taxbills issued by Westport, which had been declared invalid and afterwards had been reissued by Kansas City, and, therefore, the seller was obligated to pay the cost of all street improvements, which cost at the time of the execution of the contract was an incumbrance upon the property. 4. The improvements of Oak street having been completed prior to the execution of the contract, the cost thereof, at the time of executing the contract, was an incumbrance upon the property, even though the taxbills had not then been issued. Lafferty v. Milligan, 165 Pa. St. 534; 2 Jones on Real Property—Conveyancing, sec. 870; Car v. Dooley, 119 Mass. 294; Blakie v. Hudson, 117 Mass. 181; Forster v. Scott, 136 N. Y. 577; Cadmus v. Fagan, 47 N. J. L. 549; Tibbetts v. Leeson, 148 Mass. 102; Peters v. Myers, 22 Wis. 574; White v. Stretch, 22 N. J. Eq. 76; Campion v. City of Elizabeth, 41 N. J. L. 355; Barnhart v. Hughes, 46 Mo. App. 318; Duffy v. Sharp, 73 Mo. App. 324.

GANTT, J.—This is a suit in equity to compel a specific performance of a written contract of date July 12, 1901, for the sale and conveyance of lots 5 and 6 of Springfield Park, an addition to Kansas City, Missouri.

While the action is against Mr. and Mrs. Marston, it is conceded by both parties that Mr. Marston was merely the trustee, holding the title for the Farmers' Loan & Trust Company of New York, which had acquired the lots by foreclosure of a loan thereon.

The contract out of which this controversy originated is as follows:

"This contract, made and entered into this twelfth day of July, 1901, by and between Fidelity Trust Company, the seller, of Jackson county, Missouri, and L. Everett, the buyer, of Pottawattamie county, Iowa,

"Witnesseth: The seller has bargained and sold to the buyer the following described real estate, situate in the county of Jackson, State of Missouri, to-wit, all of lots five and six of Springfield Park, an addition to the City of Kansas, now Kansas City, Missouri, as the same are shown on the recorded plat of said addition, at and for the price and sum of five thousand dollars, to be paid as follows: one hundred dollars at the signing of this contract, the receipt whereof is hereby acknowledged by the seller, and which is deposited with Crutcher & Welsh as part of the consideration of the sale, and the balance whereof is to be payable in the following manner, to-wit: forty-nine hundred dollars at the time of the delivery of the deed as herein provided.

"The seller agrees to pay all State, county and general municipal taxes which are now due and payable, and to pay all special taxes and assessments which are now liens on said property, excepting taxbills issued by the city of Westport for sewers and other public improvements (not including park, boulevard and Paseo assessments) and all installments of park, boulevard and Paseo assessments, which are now due; State and county taxes for 1901, and all subsequent taxes are to be assumed and paid by the buyer.

"The buyer has the option of taking assignment of

insurance policies now on said property, and to pay therefor the amount of the pro-rata unearned premium from the date of delivery of deed, to the expiration of said policies.

"The seller is to furnish within ten days from the date hereof, a complete abstract of title to said property from United States Government to the present record title, with such usual certificates as may be required by the buyer as to taxes, general and special condemnation proceedings, judgments and mechanics' liens, from the various courts in which judgments would be liens thereon; and the buyer is to have ten days for the examination thereof, and for submitting to the seller a memorandum of such requirements as he may consider necessary to perfect the title.

"If the title be found to be defective the seller agrees to have the defects rectified within a reasonable time, which is not to exceed thirty days from the date at which the transfer of the property is to be consummated, under the terms of this contract, but, in case such defects in the title can not be cured or remedied within that period, and no extension of time is had between the parties, this contract is to be null and void, and the said sum of $100 deposited as aforesaid is to be returned to the buyer.

"If, though, the title be good and the seller has kept its part of this contract, the buyer fails to comply with its requirements on his part, within ten days after being furnished with the abstract of title, then the aforesaid deposit of $100 shall be forfeited to the seller, but for this cause this contract shall not cease to be operative as between the parties hereto.

"If upon examination it is found that the seller has a good title in fee to said property, it agrees to execute and deliver to the buyer or order, a good and sufficient deed thereto, properly executed, free and clear of all liens and incumbrances of every kind, excepting only such as are to be assumed by the buyer

hereunder, and concurrently, herewith, and as a part
of the same transaction; the buyer to pay the balance
of the agreed cash payment. Seller does not agree to
pay or warrant against special taxbills issued by West-
port, Missouri, afterwards declared invalid, and later
reissued by Kansas City, Missouri.

"Time is, and shall be, the essence of this con-
tract, and the sale and transfer of said property accord-
ing to the provisions hereof, shall be consummated
within the time specified above.

"In witness whereof, the said parties have here-
unto set their hands and seals the day and year first
above written.

"Executed in duplicate.

"FIDELITY TRUST Co., Agt.     (Seal.)
"By HENRY C. BRENT,
"LEONARD EVERETT.

"Seller agrees to pay all paving taxes in full."

There is no dispute that the Fidelity Trust Com-
pany of Kansas City was the duly authorized agent of
the Farmers Loan & Trust Company for the sale of
the property and that Mr. Henry C. Brent was the au-
thorized officer of the Fidelity Trust Company to sign
the contract of sale in its behalf.

After the execution of the contract, the plaintiff,
Mr. Everett, selected the Land Title Guarantee Com-
pany to examine the abstract for him and to pass upon
the title and sent said guaranty company the balance
of $4,900 to pay over and accept the deed if the title
was satisfactory. The abstract was satisfactory, and
thereupon, the Farmers Loan & Trust Company
caused Mr. Marston and wife to execute a warranty
deed and sent it to the Fidelity Trust Company to
complete the trade.

About the middle of August, 1901, Mr. Kelley
Brent, in behalf of Crutcher & Welsh, a real estate firm,
through whom the sale was brought about, took the

deed to Mr. Stroeh of the abstract company and said
to him, "Here is the deed for the property. You pay
the taxes on the land and give me a check for the bal-
ance." Thereupon, Mr. Stroeh said to Mr. Kelly
Brent: "Now, since the last report here is $400
more taxes (referring to some special taxes for the
paving of Oak street); do you want me to pay that out
of the money?" To which, Mr. Brent replied, "No,
I don't know anything about that; give me the deed
back." The deed was returned to him and he took it
back to his firm.

Thereupon, Mr. Henry C. Brent, for the Fidelity
Trust Company, on August 17, 1901, reported to the
Farmers Loan & Trust Company by letter of that date,
that at the date of the making of the contract the
special taxes for paving and sidewalks were all paid
up "but since that time special taxes for paving Oak
street, amounting to $410, had been issued, and that
there would shortly be issued special taxes of about
$125 for sidewalk on Oak street, making a total of $535
special taxes, which were not against the property at
the time the contract was made." He also advised
that Mr. Everett, the purchaser, claimed that under
the contract, the Farmers Loan & Trust Company
should pay these extra taxes. Mr. Brent gave it as his
opinion that technically Mr. Everett was right, but
that if the Loan Company was not willing to do so he
supposed they could nullify the contract.

Having obtained by wire a copy of the contract, on
August 24, 1901, the Farmers Loan & Trust Company
advised the Fidelity Trust Company that in its opin-
ion Mr. Everett's claim was groundless; that it under-
stood the written clause, "Seller agrees to pay all pav-
ing taxes in full," to mean all paving taxes up to date
of the acceptance of the offer. Later on, on the fourth
of September, 1901, the Farmers Loan & Trust Com-
pany refused to pay these Oak street special taxes and
to deliver the deeds. Thereupon, plaintiff made a

formal tender of the $4,900, and demanded a deed, which was refused, and this suit was brought for specific performance.

The property in suit is on the corner of Thirty-first and Oak streets in Kansas City, Missouri. Thirty-first street had been paved sometime previous to 1901, and an installment taxbill issued against the lots in question. At the date of the contract, one installment of this bill was still unpaid, not being due until May, 1902. Recently before the execution of the contract of July 12, 1901, Oak street also had been paved, and after the execution of the contract, to-wit, July 30, 1901, a taxbill for this paving was issued. About this time a granitoid sidewalk was laid in front of these lots and on September 17, 1901, a taxbill for this sidewalk was issued, amounting to $81.25. These two taxbills were the ones to which the Fidelity Trust Company, through Mr. Henry Brent, referred in its letter to the Farmers Loan & Trust Company of date August 17, 1901.

In his petition plaintiff alleged that these improvements of Oak street had been made and completed before he entered into the contract for the purchase of said lots on July 12, 1901; that they constituted a part of the consideration for the purchase price which he agreed to pay, and that the contract had been entered into with the understanding and belief that the costs of said improvements on Oak street had been fully paid; that is to say, that said cost was not a subsequent tax or charge upon said lots to be paid by plaintiff. He prayed that defendants be adjudged and directed to pay said taxbills and that they execute and deliver plaintiff a good and sufficient warranty deed for said property discharged of said taxbills.

The case was tried on the theory that the main question was as to the proper meaning of the contract, and whether by its terms defendants were required to pay said taxbills. Another contention is now made

that the clause, the "seller agrees to pay all paving taxes in full," was no part of the contract, because inserted by Mr. Welsh after the Fidelity Trust Company had executed the same.

I. We shall accept the finding of the circuit court that the clause, "Seller agrees to pay all paving taxes in full," was added by Mr. Welsh before the contract was executed by Mr. Brent and plaintiff, for the reason that the weight of the evidence supports that finding and the circuit court had a much better opportunity to determine the disputed point, having as it did the witnesses before it.

Besides it is a matter about which the most trustworthy witnesses might be honestly and sincerely mistaken. Taking the whole record together, we do not think the plaintiff was conclusively bound by Judge Hall's admission. The evidence of Mr. Welsh and the plaintiff, and the subsequent conduct of the Loan Company, convinces us that the latter was in no manner misled or injured by the action of the court in permitting Judge Hall to show that this clause was added before plaintiff and the Fidelity Company executed the contract.

By so holding, in the circumstances of this case, we by no means disapprove of the long established doctrine that an attorney may bind his client by admissions dispensing with the formal proof of facts.

II. Treating the contract then to be in the form in which it is pleaded, we premise by saying the points involved have been presented with unusual clearness and ability on both sides.

Some things, we take it, must be considered settled in this State: that special taxbills issued under article 9 of the Kansas City charter are not liens upon adjoining property or property in a special tax district, until such taxbills are receipted for to the board of public works and issued.

In Jaicks v. Sullivan, 128 Mo. 177, it was ruled that the operation and extent of a tax lien must be determined by the statute creating it, and its enforcement regulated by the charter if a municipal tax. Judge Cooley in his "Law of Taxation" (2 Ed.), p. 444, says, "The general rule is that taxes are not a lien unless expressly made so; and when liens are expressly created, they are not to be enlarged by construction."

In 27 Am. and Eng. Ency. Law (2 Ed.), 735, the statement is made and supported by judicial decisions of over twenty States of this Union that "there is no common law rule which makes a levy and assessment of taxes *ex proprio vigore* a lien on the property of the taxpayer. Such liens owe their existence wholly to statute; and their duration, limitation, and priorities, together with the property to which they attach, must be determined by the statutes creating them.'

Judge Cooley's statement is fortified by the text in which it is said, "Where a lien is expressly created by statute it can not be enlarged by construction, and the statute creating it must be strictly construed." [See the cases cited in support of the text.]

The law making special improvements, paving taxes a lien in Kansas City is found in the charter of that city, article 9, section 18, charter of Kansas City, which provides, "Every special taxbill issued under the provisions of this article shall be a lien upon the land described therein, *upon the date of the receipt to the board of public works therefor, and such lien shall continue for two years thereafter, but no longer.*" [Inhabitants of Houstonia v. Grubbs, 80 Mo. App. 433; Smith v. Barrett, 41 Mo. App. 460.]

We hold, then, that under this charter provision of Kansas City, the taxbills issued by Kansas City for the paving of Oak streeet after the making of the contract between plaintiff and defendants were not a lien upon the lots bought by plaintiff of defendant and hence were not included in the covenant of defendant

to pay "all special taxes and assessments which are now liens on said property, not including park, boulevard and Paseo assessments," and it is apparent that said Oak street taxbills did not fall within the agreement of the seller to pay "all State, county and general municipal taxes" or "installments of park, boulevard and Paseo assessments" which were then due.

But it is urged by counsel for plaintiff that the further provision of the contract, " that defendant would execute and deliver a good and sufficient deed to the lots properly executed, *free and clear* of all liens and *encumbrances* of every kind excepting only such as are to be assumed by the buyer hereunder," bound defendants to pay for these special Oak street improvements on the ground they were encumbrances even though taxbills therefor had not yet issued. The insistence is that the cost of every completed local improvement is an *encumbrance* within the meaning of the contract; that the improvement had been made under an ordinance of the city which charged the cost against the lots fronting upon the improvement and were issuable upon the completion of the improvement. Is this a sound distinction? Is there any authority for saying that a special tax which has not ripened into a lien is an encumbrance before that time? It is not asserted, nor can it be, that any statute or charter provision has declared it an encumbrance. A proper conclusion can not be reached as to this contention without keeping in mind certain principles which have become settled in the law of this State. The work for which special taxbills are issued against the owner of property is not done under any contract with the owner. The contract is made by the contractor with the city and the payment is not made by the city in cash, but in special taxbills. The taxbill is the only evidence of the abutting proprietor's liability for the cost of the improvement. It results solely and entirely from the exercise of the taxing power, and while in a patriotic

mood we may decry the man who does not cheerfully contribute his pro-rata share to the support of the government which protects his life, liberty and property, in our cooler moments, it must be confessed that taxes are burdens which are paid because the statute imposes them, and stands ready with summary process to enforce them, and especially is this true as to special taxes for the improvement of adjoining streets for the use of the general public.

This court, in Seibert v. Copp, 62 Mo. 182, in response to the contention that a taxbill barred as a lien by the Statute of Limitations was yet good as a charge against the property, denied it, and held that the distinction made in equity between a charge and a lien was not applicable to a special taxbill, the lien of which arises from no equity between the parties, and is not enforcible in equity, and said: ''The property is charged with a lien, and, when the lien is destroyed, no charge remains. . . . *A special taxbill has no validity or existence save as a lien on the land charged by it.* It constitutes no personal charge against the owner, and when the lien is extinguished or barred, all right of action thereon expires.''

Certainly there can be no distinction made between a charge and an encumbrance in the sense in which it is sought to be applied in this case. If the taxbill has no existence save as a lien and when the lien expires it is forever extinguished, it follows that no more has it any existence as a charge before it is issued.

Barnhart v. Hughes, 46 Mo. App. 318, in no manner militates the conclusion we have reached that a taxbill is not an encumbrance until issued. In that case the assessment was for benefits for opening a street, and by section 5 of article 7 of the charter such assessment was *a lien* from the date of the ordinance. There was not and could not have been any discussion in that case of an encumbrance antedating the lien as the

lien originated with and dated from the passage of the ordinance.

The cases of Duffy v. Sharp, 73 Mo. App. 316, Allen v. Sales, 56 Mo. 28, and Reilly v. Hudson, 62 Mo. 383, are not applicable. They were mechanics' liens and attached as of the date the material was furnished. Those cases affirm the settled doctrine in this State that under our mechanic's lien law the lien, when perfected, related to the date of the furnishing of the materials or performance of the labor. There is no room for an intermediate *encumbrance*.

The conclusion we have reached is fully supported by the decisions of the Court of Appeals of New York and the Supreme Court of Kansas in Dowdney v. Mayor, 54 N. Y. 186; Tull v. Royston, 30 Kan. 617; Harper v. Dowdney, 113 N. Y. 644.

In Blackie v. Hudson, 117 Mass. 181, the statute did not fix the time when the lien of the tax should attach and the court simply invoked the statute as to the assessment of general taxes which makes *the lien attach* from the date of the assessment.

Of course the lien was an encumbrance from the date of the order to do the work under the rule adopted, but it was not held the work was an encumbrance independent of the lien; they were one and the same.

Cadmus v. Fagan, 4 Atl. 323, does not oppose the view we have expressed. The court held that the tax was a lien from the date of confirmation, but if the confirmation was set aside and a new assessment made and confirmed, the lien related to the first confirmation.

With this conclusion we find no fault. The reasoning of the court fully supports the conclusion we have reached, to-wit, that the implication of an encumbrance from the general scope of the charter provisions for the payment of special improvements can not be upheld, in the face of a positive statutory or charter provision fixing the date of the commencement of the lien. Especially applicable is the remark of the

court that "this construction establishes a convenient rule capable of practical application. The date when the lien attaches is, under this rule, discoverable by record evidence. Under the rule stated by the Supreme Court, it could only be fixed by parol evidence, which, in respect to the completion of the work, might be uncertain or even variant."

We think it highly important that the date of the *lien* should be fixed for the protection of grantors and grantees and encumbrances. The attempt to discriminate between an encumbrance and a lien for the purpose of avoiding the date when the latter attaches can but lead to confusion and uncertainty. We have examined the Washington case (Green v. Tidball, 26 Wash. 338), but are not satisfied with its reasoning. Certainly a number of the cases cited do not, in our opinion, sustain the judgment reached. The Pennsylvania case (Lafferty v. Milligan, 165 Pa. St. 534), sustains plaintiff's contention, but is not in harmony with our decisions on this subject.

Our conclusion then is that the covenant in the contract to make a deed free from liens and *encumbrances* did not obligate the defendant to pay these taxbills which were neither liens nor encumbrances when the contract was made, and the liability relates to the date of the contract which fixed the rights of the parties.

III.  This brings us to the remaining proposition of plaintiff, that the clause, the "Seller agrees to pay all paving taxes in full," outside of the original draft of the contract, bound the defendants to pay not only paving taxes that were *then liens and encumbrances*, but *all paving taxes* for improvements then completed but not issued. In support of this position plaintiff invokes the well-settled rule that for the purpose of arriving at the intention of the parties to a written instrument the circumstances under which it was executed

may be shown, and, therefore, when plaintiff agreed
to take the lots at $5,000, the paving of Oak street was
completed and the sidewalk laid, and when read in the
light of these facts and plaintiff's knowledge thereof,
the meaning of defendant's agreement "to pay all
paving taxes in full," was that defendant was to pay
these Oak street paving and sidewalk taxes for the
paving then completed. To this, defendants reply that,
admitting that both parties knew that the Oak street
paving was completed at the time of the execution of
the contract, still defendants are liable only according
to the stipulations in their contract, and were not
thereby obligated to pay the taxbills for improving
Oak street. Their insistence is that the contract con-
tains a special separate paragraph covering the matter
of taxes and special assessments and specifies with
exactness just what taxes and assessments were to be
paid by the seller. That clause of the contract pro-
vides that "the seller agrees to pay all State, county
and general municipal taxes which are now due and
payable, and to pay all special taxes and assessments
which are *now liens* on said property, excepting tax-
bills issued by the city of Westport for sewers and
other public improvements (not including park, boule-
vard and Paseo assessments) and all installments of
park, boulevard and Paseo assessments which are
*now due;* State and county taxes for 1901 and all sub-
sequent taxes are to be assumed and paid by the
buyer."

Defendants insist that this is a special, careful and
particular recital of the taxes they agreed to pay and
that this specific enumeration excludes all other taxes
and encumbrances which might otherwise be included
within the general language of the contract.

That the specification of just what taxes and
special assessments defendants were to pay was exact
and minute is not to be gainsaid, and this court, in
Dart v. Bagley, 110 Mo. l. c. 54, adopted as a canon of

interpretation the statement that "there is a general rule of construction applicable to all writings, constitutions, statutes, contracts and charters, public or private, and even to ordinary conversations, that general and unlimited terms are restrained and limited by particular recitals when used in connection with them." [Torrance v. McDougald, 12 Ga. 526; Miller v. Wagenhauser, 18 Mo. App. 14.]

What effect then did the addition of the general clause, "Seller agrees to pay all paving taxes in full," have upon the special limitations as to liability for taxes? Certainly it did not nullify the very positive and particular covenants as to park, boulevard and Paseo assessments, as to which defendants agreed to pay only those then due, for that would be to violate every rule of construction.

It cannot be that, by the insertion of these very general words, all the special stipulations as to taxes and assessments so carefully guarded were entirely eliminated from the contract. Nor can it fairly be insisted that by these words the defendants bound themselves to pay for all paving that was then made or might thereafter be made; indeed plaintiff makes no such contention, but limits it to all paving then completed, though not a lien on the lots he bought. The question then in view of the whole contract and every part of it is, what "paving taxes" was defendant required to pay in full? As already said, obviously not all taxbills that might ever be assessed against said lots. Were they to pay all taxbills that might be assessed for work previously ordered but not completed? Plaintiff does not so claim. His insistence is that it included all taxbills that might be assessed for work already completed but for which taxbills had not issued. It must be remembered that this is a written contract deliberately entered into without fraud or concealment, and all prior and contemporaneous agreements are conclusively presumed to have been merged

into its stipulations. It says, "all paving taxes." We must hold this stipulation covers all paving taxes which were then taxes, and which defendant had agreed to pay must be paid in full, whether due or *not*. We have already said these taxbills issued subsequently to the making of the contract were not liens or encumbrances at that time, and we are bound to say they were not paving taxes, either, at that time. At that date there was no personal liability on the part of defendant to pay for these improvements on Oak street for which no taxbills had issued, neither were they a lien or charge against the said lots. There was neither obligation to pay, nor any one to whom they could be paid, as there is no evidence that at that time it had been ascertained what they would amount to. What then could this stipulation refer to? Clearly we think the contract specifies. It covered those taxbills which were "now liens on said property but not due, and installments of park, boulevard and Paseo assessments then due." It appears from the evidence that there was then a fourth installment of the taxbill for Thirty-first street unpaid which would be due in May, 1902. It was entirely proper that plaintiff should require this tax which, though not yet due, was a lien, should be paid in full, but it appears that this was the only paving tax then in existence against these lots and to which this agreement could apply.

But it is urged that Mr. Welsh and Mr. Everett both knew this paving on Oak street was then completed. On the other hand, Mr. Henry Brent, who represented the defendants, testified positively that he did not know there was any paving, and he it was who agreed to accept the $5,000. If Mr. Everett, the plaintiff, made his offer on the understanding on his part that defendants were to pay the Oak street paving tax when assessed and taxbills issued therefor, and Mr. Welsh so understood it, it was an easy matter to

have inserted a plain, unequivocal agreement to that effect, and not this general clause, which in no manner was calculated to call the attention of defendant's agent the Fidelity Company, to it at the time, and which by its terms in no manner changed the other specific and particular agreements to pay the special assessments then due or which were liens, but not due. The duty devolving upon us is not to make a contract for these parties, but to interpret the contract they have made as evidenced by the writing before us, and reading and construing it as written, we are of the opinion that the defendants were not obligated by their covenants to pay taxbills which became liens for the first time after the execution of the contract, and that neither the clause against encumbrances, nor the agreement to pay all paving taxes in full, bound defendant to pay these taxes which were not liens or taxes at that, but these clauses were limited by the express covenants of the contract to taxes then due and payable and special assessments which were liens at the time the contract was made and due and to become due.

It results that the decree of the circuit court must be and is reversed with directions to dismiss the bill at the cost of plaintiff.

All concur.