## CITY OF ST. LOUIS v. DYER et al.

### SAME v. GRONE et al.

### SAME v. GRIESEDIECK et al.

#### Nos. 9259–9261.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1932.

J. B. Steiner, of St. Louis, Mo. (Julius T. Muench and G. William Senn, both of St. Louis, Mo., on the brief), for appellant.

Charles D. Long, of St. Louis, Mo. (Rassieur, Long & Yawitz, of St. Louis, Mo., on the brief), for appellees Grone, Griesedieck, and others.

Arnold Just, of St. Louis, Mo. (McDonald & Just, of St. Louis, Mo., on the brief), for appellee Dyer and others.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

March 10, 1930, the United States filed in the district court for the Eastern district of Missouri its petition in condemnation of certain property in the block bounded by Eleventh, Twelfth, Market, and Walnut streets, in the city of St. Louis, Mo., for a new Federal Building site. Appellant and all of the appellees were parties to this suit. The viewers appointed made their award, and January 3, 1931, judgment was entered in said cause decreeing condemnation and the right thereof in the plaintiff; that the United States did by those proceedings acquire the title in fee simple to the premises described in the petition, and that every interest therein should vest in said sovereign plaintiff, the United States of America, free and clear of any and every right, title, and interest therein, and of all claims, liens, and incumbrances of every kind, nature, and description. The court further entered judgment, in favor of parties to the suit whose property was taken, in such sums as were awarded by the viewers, and found to be due upon hearing of exceptions to the viewers' report. The total amount of this judgment, aggregating $1,069,027.32 in solido, was paid into the registry of the court February 12, 1931, and the court entered its order of satisfaction February 13, 1931. All of the appellees petitioned the court for payment to them of their respective awards.

The city of St. Louis had, prior to the filing of the government condemnation suit aforesaid, instituted proceedings in the circuit court of the city of St. Louis in connection with two improvement projects, known as the "Market Street Widening" and "Memorial Plaza Opening." These proceedings were still pending, and had never been reduced to judgment when this appeal was heard. It was admitted at the trial that no physical work had then been done upon either of these projects, nor was there any evidence that any benefit therefrom, which might accrue to the property, was considered or included by the court or the viewers in arriving at the amounts of the awards, nor that the

value of the property had been enhanced by either of these projects. However, commissioners in these proceedings had been duly appointed by the circuit court of St. Louis having jurisdiction thereof, and said commissioners had fixed the benefit or taxing district, which included property of appellees involved in the condemnation case of the government for the taking of which, compensation was awarded by the judgment of January 3, 1931. Said commissioners had duly filed their report assessing, special benefits against said property of appellees in connection with the two municipal improvement projects above described.

February 13, 1931, contemporaneously with the order to satisfy judgment, the city of St. Louis filed, in the district court having jurisdiction of the federal condemnation suit, its motions to have withheld, out of the payments to be made to the various appellees involved, the amount of these benefit assessments, not yet reduced to judgment, in connection with the said "Market Street Widening" and "Memorial Plaza Opening." These motions were duly heard by the district court and overruled. This action by the court, being final in its nature, is the subject of these appeals. The question for determination is thus well stated in the brief of appellees: "The sole issue here involved is whether special benefit assessments not yet reduced to judgment and, therefore, not yet liens, are collectible out of the fund paid into court herein for the benefit of the property owners under the judgment of the United States District Court."

The cases of the several appellees were consolidated by this court for purposes of argument, and it was stipulated and ordered that the cases might be submitted upon one printed transcript.

The contentions of appellant, in substance, are that the government, in condemning private property, stands in the position of a voluntary purchaser, pendente lite, and is subject to prior condemnation suits of the city; that the publication of the benefit or taxing district in the two city condemnation cases established the priority of the city's claims; that a condemnation proceeding under the city charter is one suit, even though powers both of eminent domain and of taxation are exercised; that the award of damages paid into the registry of the district court took the place of the land, appellees having in the fund the same interest they had in the land; and upon the failure of appellees to file exceptions to the assessment of special benefits made by the commissioners in the two municipal projects within the time allowed by law, certain rights in the nature of potential liens arose in favor of the city.

The matter at issue must be determined by the law of the state of Missouri. Fortunately the decisions of its courts of last resort furnish not uncertain guidance to a proper solution. Article 21 of the Charter of the City of St. Louis, adopted August 29, 1914, has to do with condemnations of private property for public use. After providing for the institution of such proceedings by ordinance, for the appointment of commissioners to fix the benefit or taxing district, and to assess benefits and damages therein after notice to parties whose property is affected, for the report of such commissioners, and for the hearing and disposition of exceptions thereto, section 8 of article 21 provides as follows: "The court upon approving the commissioners' report shall render final judgment thereon reciting the report and adjudging that the city have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in each instance; that so much of the report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment, and prior to all other liens thereon; and that the city recover the respective benefits in excess of damages assessed in each instance against private property with interest from date of judgment and have execution therefor."

■ It is quite true, as appellant says, that a condemnation proceeding under the City Charter of St. Louis is a single suit, involving the exercise of powers both of eminent domain and of taxation. If the city had undertaken to appropriate the property of appellees by proceedings instituted prior to that of the government for the same purpose, no doubt the right of the city would have been superior to that of the United States with respect to the property sought to be taken. But, in the cases before us, the property of appellees was not taken by the city, but was assessed with benefits, conceived to accrue to it because of the proposed improvements. As to appellees, therefore, the city is exercising its power of taxation and not its power of eminent domain. The fact that both powers are exercised in the same proceeding does not alter the relationship of the parties to that proceeding. Such is the holding of the Missouri courts: "The doctrine that the property of a citizen especially benefited by a public improvement may be made

to contribute, for such special benefit, to the expense thereof, an amount equal to such benefit, over and above the amount to be contributed by his property in common with other citizens for the common benefit, though sometimes questioned, is now so universally accepted and well established that it is unnecessary to cite authorities in support of it. It is also as well settled that the power of the government by which such contribution is enforced is the exercising of the taxing power of the government, and not of the power of eminent domain." City of St. Louis v. Ranken, 96 Mo. 497, 500, 9 S. W. 910, 912. See, also, to same effect, City of St. Louis v. Brinckwirth et al., 204 Mo. 280, 297, 102 S. W. 1091.

■ It will thus be seen that, by its condemnation suit, the city acquired against the government no priority of claims affecting the property involved in this controversy. It is likewise true that, when the government paid into the registry of the court the amounts awarded as damages to appellees, the latter had the same interest in the fund that they previously had in the land taken. Of course, it is conceded that appellees are not personally liable for the benefits assessed against their land. If the land itself, or, now, the fund which takes its place, can be held, it must be because of some lien that had attached while the title to the land was still in appellees. Section 8 of the charter provides that a lien for benefits against specific property shall take effect from the entry of the judgment in court. The trial judge says that, to charge the fund standing in lieu of the land, "at least one of two verities must be present; (a) there must be a final judgment which confirms assessed benefits before the fund is paid into court, or (b) the record must somewhere show that the viewers took the assessed benefits into consideration and in their report augmented the value of the land by reason of such benefits, and to the extent of the amount thereof."

This statement accords with the holdings of the Missouri Courts. In re Paseo, 78 Mo. App. 518; Ross v. Gates et al., 183 Mo. 338, 348, 81 S. W. 1107; Everett v. Marston, 186 Mo. 587, 85 S. W. 540.

■■ It is conceded that no work has been done upon the projected city improvements, and that no judgment had been entered; nor is there any evidence that either viewers or court included in the amount of the awards any benefits that might be conceived to accrue from such improvements. There is no evidence that the value of the property was thereby enhanced. Apart from the express charter provision, there is a very substantial reason why the benefit assessments should not become liens until judgment is pronounced.

"A municipal corporation has the right to discontinue proceedings for condemning property for public uses and to abandon such public improvements at any time before a final award in the nature of a final judgment in favor of the property owner." St. Louis Brewing Association v. City of St. Louis, 168 Mo. 37, 44, 67 S. W. 563, 565. See, also, Lester Real Estate Co. v. City of St. Louis, 170 Mo. 31, 70 S. W. 151.

Counsel for appellant in argument stated that the dismissal of these proceedings by the city was highly improbable, but, so long as the power exists, the situation is not altered. However, the existence of a subsisting lien is not seriously urged. Rather, counsel place reliance upon potential liens arising from appellees' failure to file exceptions to the assessments made by the commissioners within the time allowed by law.

■ We agree with the trial judge that "the courts have, for the most part, resolved it (the question at issue) upon inquiry whether there was an existing, rather than a mere potential lien." Where such so-called potential liens have been recognized it will be found, generally, that special equities have arisen from the fact that the work upon the improvements had been completed, the value enhanced, or the benefit which might accrue to the property included by court or viewers in the amount of the awards before the title to the land condemned had passed to the condemner. Otherwise the rule of protection, that a lienholder may have his lien satisfied out of a fund awarded and paid into court as a substitute for the land taken, extends to judgment liens, tax liens, and the like, and "applies only to lienholders or creditors of the interest taken or affected, and to liens existing at the time the property is taken." 20 Corp. Jur. p. 855, par. 290. See, also, In re Torchia (C. C. A. 3) 188 F. 207. This conclusion in nowise conflicts with the decision of the Supreme Court of Missouri in State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.(2d) 80, 69 A. L. R. 1256. That case merely holds that a fair compensation for property taken is a substitute to the owners for that of which they have been deprived, and that such owners have the same rights in the fund substituted that they had in the property itself.

The decision of this court in City of St. Paul v. Certain Lands in City of St. Paul, Minnesota, 48 F.(2d) 805, 807, merely holds that the government is not interested in the question of the proper distribution or apportionment of an award. "Its duty will have been performed when it pays the amount of the award into court." Whether the benefits involved in that case had ripened into liens or claims enforceable against the fund, must hereafter be determined in accordance with the facts and the law applicable.

Much has been said in brief and argument respecting the "natural equity and justice" of appellant's claim. The trial court, keenly alive to this consideration in view of the great difficulties in the way of other relief, was, however, "unable to find any law to jump with my personal wishes in the case." Whatever our personal feelings may be, we must be content with the sound philosophy found in the opinion of the Supreme Court of Missouri in Everett v. Marston, 186 Mo. 587, 600, 601, 85 S. W. 540, 543: "The insistence is that the cost of every completed local improvement is an incumbrance, within the meaning of the contract; that the improvement had been made under an ordinance of the city which charged the cost against the lots fronting upon the improvement, and were issuable upon the completion of the improvement. Is this a sound distinction? Is there any authority for saying that a special tax which has not ripened into a lien is an incumbrance before that time? It is not asserted, nor can it be, that any statute or charter provision has declared it an incumbrance. A proper conclusion cannot be reached as to this contention without keeping in mind certain principles which have become settled in the law of this state. The work for which special tax bills are issued against the owner of property is not done under any contract with the owner. The contract is made by the contractor with the city, and the payment is not made by the city in cash, but in special tax bills. The tax bill is the only evidence of the abutting proprietors' liability for the cost of the improvement. It results solely and entirely from the exercise of the taxing power; and while, in a patriotic mood, we may decry the man who does not cheerfully contribute his pro rata share to the support of the government which protects his life, liberty and property, in our cooler moments it must be confessed that taxes are burdens which are paid because the statute imposes them, and stands ready with summary process to enforce them, and especially is this true as to special taxes for the improvement of adjoining streets for the use of the general public."

The judgment below must be affirmed.

It is so ordered.