CATHARINE CADMUS AND JOHN COMBES, EXECUTORS, PLAINTIFFS IN ERROR, v. PATRICK FAGAN, DEFENDANT IN ERROR.

Lands in the city of Bayonne, upon which an assessment for a municipal improvement had been imposed, which remained unpaid, were conveyed by a deed with a covenant against encumbrances. The assessment was afterwards removed to the Supreme Court and vacated. By the order which vacated the assessment commissioners to make a re-assessment were appointed. The re-assessment made by them was paid by the grantee. *Held,* that the covenant was broken by

Cadmus v. Fagan.

the existence of the first assessment unpaid, that the re-assessment related back as an encumbrance to the date of the confirmation of the first assessment when the latter became a lien, and that the measure of damages for the breach of the covenant is the amount paid on the re-assessment.

The writ of error brings up a judgment of the Hudson Circuit, in an action on a covenant against encumbrances contained in a conveyance of lands in the city of Bayonne, dated September 26th, 1872.

The cause was tried without a jury and upon facts agreed on. The following thus appeared :

At the date of the conveyance an assessment for the expense of opening a street, which had been laid on the lands and was confirmed September 28th, 1871, remained unpaid. In 1877 the assessment was removed to the Supreme Court by *certiorari*. On November 12th, 1877, it was vacated as to the prosecutors of the *certiorari*. On June 14th, 1878, it was set aside as to all persons affected thereby. By the same order the Supreme Court appointed commissioners to make a new assessment. They made a new assessment, which was confirmed March 21st, 1879.

It was agreed that the plaintiff below should be considered to have paid the amount of the latter assessment on June 19th, 1883.

Upon the case so made two questions were certified to the Supreme Court for its advisory opinion, viz. : 1. Whether the plaintiff was entitled to recover ; and 2. If entitled to recover, what should be the measure of damages.

The opinion of the Supreme Court, which is reported in 17 *Vroom* 441, was returned to the Circuit Court and judgment was entered in conformity therewith.

Thereupon this writ was brought.

For the plaintiffs in error, *Peter Bentley*.

For the defendant in error, *Parmly, Olendorf & Fisk*.

The opinion of the court was delivered by

MAGIE, J.   The conclusions reached by the Supreme Court in its advisory opinion were: 1. That the covenant on which the action was brought was broken when made by the existence of the original assessment unpaid ; and 2. That the plaintiff below (the defendant in error) was entitled to recover not merely nominal, but actual damages, measured by the amount agreed to have been paid on the assessment imposed after the vacation of the original assessment.

The correctness of the first conclusion has not been and cannot be disputed.

The second conclusion is the point of contest and error complained of in this case.

The result in that respect reached so accords with my view of the case that I should be content to vote to affirm this judgment without comment, but for the fact that it appears to have been grounded on reasons with which I find myself unable to agree.

The question presented for solution related to the *status* of an assessment imposed after the vacation of a former assessment.   If the re-imposed assessment became an encumbrance only from its determination or confirmation, then only nominal damages were recoverable, for the encumbrance which caused the breach had been wholly vacated.   But if the re-imposed assessment related back as an encumbrance to a time prior to the covenant, then its payment was the payment of an encumbrance covered by the covenant, and the amount paid would measure the damages to be recovered.

The Supreme Court adopted the last-mentioned proposition, but in the opinion it was declared that the re-imposed assessment related back, as an encumbrance, not to the date of the first assessment, but to the time when the work for which the assessments were made was completed.   Cases from the courts of Massachusetts were cited and relied on as sustaining that doctrine, and it was on this ground that it was adjudged that the payment of the last assessment was the payment of an encumbrance existing at the date of the covenant.

It is from this portion of the opinion that I feel constrained to dissent. To adopt the doctrine there enunciated, as establishing the correct rule for determining the time when the lien of such assessments attaches to land, under the provisions of such charters as that of the city of Bayonne, would, in my judgment, be opposed to a proper construction of those provisions.

It is completely settled that taxes, whether general or specially imposed by reason of peculiar benefits conferred by a public improvement, become liens on land only by virtue of express legislation. The power to impose the lien necessarily includes the power to limit its extent and duration. *Cooley on Taxation* 305; *Herne* v. *Levee Com'rs*, 19 *Wall.* 655; *State, Society, &c., pros.,* v. *Paterson,* 13 *Vroom* 615; *Johnson* v. *Van Horn,* 16 *Vroom* 136.

The first question, therefore, must be, What has the legislature prescribed? The legislative intent to impose the tax as a lien must appear; the extent and duration thereof may be expressly declared, or, in the absence of express declaration, inferred from the language of the acts or their general scope.

The charter of Bayonne, after prescribing the mode in which the commissioners of assessment should make up and present to the board of councilmen an assessment of this sort, declares that "if said board of councilmen shall, by resolution, confirm said assessment, it shall constitute a lien on the property assessed for the amount of such assessment." *Laws of* 1869, *p.* 371, § 58. In this respect, the provisions of this charter are similar to those of other municipalities and identical with many.

Applying to such clauses the ordinary rules of construction, I think we are driven to the conclusion that the legislative intent is thereby, either expressly or by a persuasive and necessary implication, shown to be that the lien of the assessment should attach at the date of its confirmation. In the face of this expression, I conceive it to be impossible to hold that the time when the lien should attach was left to an implication to be deduced from the general scope of the legisla-

·tion. If left to such a deduction, it seems to me we should be forced to hold that the lien attached when the work was ordered to be done, rather than when it was completed. But as the declaration of the charter is, that when an assessment shall be confirmed it *shall constitute* a lien, in my opinion we are not left to inferences from the general scope of the act, but the enactment itself fixes the date at which the lien is to attach as that of the original confirmation of the assessment.

This construction, it is not amiss to note, establishes a convenient rule capable of practical application. The date when the lien attaches is, under this rule, discoverable by record evidence. Under the rule stated by the Supreme Court, it could only be fixed by parol evidence, which, in respect to the completion of the work, might be uncertain or even variant.

Besides, the construction I put on these provisions has, I think, been generally adopted in practice by a concensus of the profession. To overthrow it, would, in my judgment, be disastrous. It would operate to unsettle titles, and would vastly increase litigation on covenants of this sort, if the time at which these liens attach themselves to lands is open to the uncertainty of parol testimony.

My conclusion is, that the lien of the original assessment in this case attached to the land, not when the work was completed, but when the assessment was confirmed.

Upon this view, the conclusion of the Supreme Court may be supported in accord with principles already established.

Assessments of this sort have been treated as adjudications having the force of judgments, so long as unmodified and unvacated, in respect to moneys paid thereon. *Davenport* v. *Elizabeth,* 12 *Vroom* 362; *Campion* v. *Elizabeth,* 12 *Vroom* 355; *Jersey City* v. *Green,* 13 *Vroom* 627.

In *Campion* v. *Elizabeth supra,* the action was to recover money paid on an assessment which had been afterwards vacated. But it appeared that after the vacation, a new assessment had been imposed to as great an amount. The Circuit Court had denied the right of recovery, holding that

the proceedings to assess and re-assess were a unit, resulting in the substitution of the new assessment for the former one. The case was affirmed in this court upon grounds which indicated, although they did not require, a concurrence with the view expressed in the Circuit.

In *Cross* v. *Hayes*, 16 *Vroom* 12, the Supreme Court held that an assessment of this sort was a mere determination of the amount which, on the basis of benefits conferred, should be returned to the public, and that an unsuccessful effort to levy this form of tax, might be followed by a successful one, truly measuring the burden which the land should bear and which should take the place of the former one. This case was affirmed in this court upon the opinion read in the Supreme Court. *Cross* v. *Hayes*, 16 *Vroom* 565.

So it has been held that in making a re-assessment the assessing officers should determine the liability as of the date of the first assessment. *Johnson* v. *Trenton*, 14 *Vroom* 166. In this court, in a suit to recover the excess of a payment made on an assessment afterwards vacated, over the amount of a re-assessment, it was held that the amount of the re-assessment was to be charged against the payment as of the date of the first assessment, and interest could be recovered only on the balance. *Jersey City* v. *O'Callaghan*, 12 *Vroom* 349.

From these cases it appears that proceedings of this kind have a sort of unity. When an assessment is made, it becomes a lien (if the statute so directs) at a time fixed by the confirmation or other similar act. If thereafter proceedings are taken resulting in affirming, or, at least, in not disturbing the foundation of the assessment, viz., the making of the improvement, but disaffirm and annul the adjudication fixing the amount to be imposed, then if a re-assessment is provided for, the latter, though separated from the first assessment in point of time, is, in intendment of the law, a single procedure with the former, and a mere revision of the adjudication. It relates back to the original assessment and takes practical effect, as to liability, as to drawing interest, and, in my judgment,

as to becoming a lien, as of the date of the original assess- ment.

So in the case before us, the original assessment adjudged that the expenses of the improvements were to be paid in re- spect to specified property in specified amounts, which, on its confirmation, became liens.   When this adjudication was vacated the property was not exonerated from a liability but remained liable to the true amount and proportion of the expenses when imposed in the legal continuance of the pro- ceeding.   When the true amount was determined, it became a. charge as of the date of the original assessment.

The case of *White* v. *Stretch*, 7 *C. E. Green* 76, presented the same question now before us.   The conclusion reached by Chancellor Zabriskie accords with the views here expressed. He says :

" But the assessment was merely the mode of ascertaining the share of the cost of the sewer to be paid by these lots ;. they were liable to pay for the cost of the sewer from the time the proceedings were completed by the confirmation of the first assessment.   That liability was the real encumbrance.   It existed at the date of the deed, and it was never for a moment removed ; the same judgment which set aside the assessment, affirmed the proceedings which created the encumbrance, and affirmed the continuance of that encumbrance by appointing commissioners to ascertain the proportion which each lot should pay.   If, then, the cost of this sewer was an encum- brance on these lots at the date of the deed, and that encum- brance has never been removed, but the only change has been that the assessment of the amounts which is the share of these lots, has been changed, the conclusion is inevitable that White is liable to relieve the premises from it."

The present Chancellor has presented a similar view of the subject.   *Commissioners* v. *Linden*, 13 *Stew. Eq.* 27.

It is on the grounds above stated that I approve the result arrived at in the Supreme Court, and shall vote to affirm the judgment before us on this writ of error.

*For affirmance*—THE CHANCELLOR, DIXON, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, PATERSON. 9.

*For reversal*—None.