## BINDER REALTY CORP., A CORPORATION OF NEW JERSEY, PLAINTIFF, v. CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANT.

Decided July 18, 1941.

For the plaintiff, *Newton M. Roemer* (*Archibald Kreiger*, of counsel).

For the defendant, *Raymond Schroeder* (*Joseph A. Ward*, of counsel).

WOLBER, C. C. J. The plaintiff in its complaint sets forth that on February 4th, 1941, a judgment was entered by the State Board of Tax Appeals in its favor and against the defendant directing that the assessment on property owned by plaintiff in the City of Newark for the year 1939 be reduced to $50,900, a net reduction from the former assessment by the defendant in an amount totaling $6,300; that the amount which the defendant was required to remit to defendant was based on a tax rate of $4.55 per $100, which amounts to the sum of $286.65, and that the defendant has not paid said sum or any part thereof, although the judgment remitting the said amount remains in full force and effect. Plaintiff demands judgment against the defendant for $286.65, together with interest from February 4th, 1941, and costs.

Defendant in its answer, after admitting the truth of the allegations of the complaint, with the exception that it denies it was required to remit the sum of $286.65 to the plaintiff,

and a denial that the plaintiff is entitled to said sum, sets up four separate defenses, the first separate defense that the admitted sum is not due and owing to the plaintiff; the second separate defense that as a result of said judgment of the State Board of Tax Appeals the defendant credited said sum to the taxes due for the year 1941 on said property; the third separate defense that the whole amount of the taxes for the year 1939 was not paid to the City of Newark by the plaintiff, and that the plaintiff is not entitled to the said sum; and the fourth separate defense that the plaintiff did not pay to the city the whole amount of the tax for the year 1939, and ought not to recover more than a *pro rata* amount of said sum of $286.65, based on the portion of taxes paid for the year 1939 by the plaintiff.

In its answer defendant reserved the right to strike out the complaint, either at or before the trial of the above cause.

This matter comes before me on an application by the plaintiff for an order to strike out the four separate defenses contained in the answer, on the ground that each one is insufficient in law, and asks for the entry of a summary judgment in favor of the plaintiff against the defendant for the sum of $286.65.

In conformity with Supreme Court rules 80 and 81, affidavits have been submitted to me by the respective parties.

On the day set for hearing the plaintiff's motion to strike out the answer and the separate defenses, defendant made application for an order to strike out the complaint on the grounds that it was part frivolous and part sham, and that it did not disclose a cause of action, together with a supporting affidavit. I cannot now consider defendant's cross motion, supported by an affidavit, because it has filed an answer.

Defendant must decide either to move to strike out the complaint or answer the complaint. When he makes a decision he must abide by it. He cannot decide to answer the complaint and do so, and then afterwards move to strike out the complaint, any more than under common law pleadings a defendant could plead to a declaration and then afterwards demur to it. *Apfelbaum* v. *Pierce* (*Supreme Court,* 1924, *P. C.*), 2 *N. J. Mis. R.* 1150; 126 *Atl. Rep.* 738; *Klughaupt*

v. *Acquackanonk Water Co.* (*Supreme Court,* 1924, *P. C.*), 2 *N. J. Mis. R.* 1188; 126 *Atl. Rep.* 739.

Of course, I can consider any question of law presented for decision in the case out of a motion on the pleadings, under rule 40 of the Supreme Court, which takes the place of a demurrer to a pleading. *Lehigh Valley Railroad* v. *United Lead* (*Supreme Court,* 1926, *Black, J.*), 102 *N. J. L.* 545; 133 *Atl. Rep.* 290.

From the affidavits before me it is undisputed that on October 1st, 1938, the plaintiff was the owner of lands and premises in the City of Newark; that on that assessing date a valuation of $12,700 was assessed against the land and $50,000 against the improvements thereon, making a total assessment of $62,700. Within the time required by law, the plaintiff appealed from said assessment to the Essex County Board of Taxation and that Board ordered the property to be assessed as follows:

Land .......................... $12,200.00
Improvements . .............. 45,000.00

Total Assesssment ......... $57,200.00

Within the time required by law plaintiff appealed from the assessment as reduced by the County Board to the State Board of Tax Appeals of the State of New Jersey.

During February, 1940, defendant remitted to plaintiff the sum of $250.25 for the remission in the assessment made by the County Board.

On February 4th, 1941, the State Board of Tax Appeals entered its judgment for a further reduction on the assessment as follows:

Land ......................... $9,100.00
Improvements ............... 41,800.00

Total Assessment .......... $50,900.00

On March 14th, 1939, the plaintiff paid the first quarter of the 1939 taxes amounting to $596.42; on May 9th, 1939,

the premises were acquired by the Keil Realty Co. by deed from the plaintiff; and on May 23d, 1939, September 23d, 1939, and November 29th, 1939, the Keil Realty Co. paid the balance of the taxes for the year 1939 amounting to $2,256.43.

The Keil Realty Co. also filed an appeal for the reduction, of the assessment with the State Board of Tax Appeals, but that appeal was dismissed for lack of prosecution on February 4th, 1941.

Under our Tax Act, Revision of 1918, as amended, *R. S.* 54:4-23; *N. J. S. A.* 54:4-23, the assessor shall ascertain the names of the owners of all real property situate in his taxing district, and, after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1st next preceding the date on which the assessor shall complete his assessments, as hereinafter required.

Our "Tax Sale Law," Revision of 1918, *R. S.* 54:5-6; *N. J. S. A.* 54:5-6, provides that all unpaid taxes on lands, with interest, penalties, and costs of collection shall be a lien on the land on which they are assessed on and after December 1st of the year in which they fall due.

*R. S.* 54:3-27; *N. J. S. A.* 54:3-27, as amended, permits a taxpayer who shall file an appeal from an assessment against him to pay to the collector of the taxing district such portion of the taxes assessed against him as he would be required to pay if his appeal were sustained; and further provides that the payment of part or all of the taxes upon any property, due for the year for which an appeal from an assessment upon such property has been or shall hereafter be taken, or of the taxes for subsequent years, shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal before the county board of taxation, the State Board of Tax Appeals, or in any court to which the judgment arising out of such appeal shall be taken.

Our General Tax Act, Revision of 1918, as amended, *R. S.* 54:4-56; *N. J. S. A.* 54:4-56, also provides that upon the sale and transfer of any real estate in this state, unless other-

wise provided in a written agreement between the seller and purchaser, the seller shall be liable for the payment of such proportion of the taxes for the current year upon the property. to be conveyed as the time between the previous January 1st and the date of the delivery of the deed by the seller to the purchaser bears to a full calendar year. If the amount of the taxes for the current year shall not have been determined at the time of the delivery of the deed of conveyance, the amount of the taxes last previously assessed against such real estate shall be used as the basis for computing the apportionment herein provided.

All proceedings for the taxation of property in the State of New Jersey for public purposes must be found in our statute law. Any action or determination of a County Board of Taxation may be appealed for review to the State Board of Tax Appeals under such rules and regulations as it may from time to time prescribe, and it may review such action and proceedings and give such judgment therein as it may think proper. *R. S.* 54:2-35 and 39; *N. J. S. A.* 54:2-35 and 39.

The County Board of Taxation shall summarily hear and determine the appeal, and revise and correct the assessment in accordance with the true value of the taxable property. *R. S.* 54:3-22; *N. J. S. A.* 54:3-22.

The determination of the State Board of Tax Appeals shall be evidenced by a judgment signed by at least three members and filed with the secretary. *R. S.* 54:2-14; *N. J. S. A.* 54:2-14.

All remissions granted by the County Board of Taxation shall be credited on the second half of the taxes. *R. S.* 54:4-105; *N. J. S. A.* 54:4-105.

In the absence of any other statutory authority to credit remissions, the second separate defense in the answer is insufficient in law.

In the determination of the questions before the court, the case of *Ocean Grove, &c., Association* v. *Bradley Beach* (*Supreme Court,* 1918, Gummere, C. J.), 91 *N. J. L.* 364; 103 *Atl. Rep.* 812, will be helpful. That was an action on *assumpsit* brought to recover a certain proportion of taxes

paid by the Ocean Grove Camp Meeting Association to the borough clerk of Bradley Beach for the year 1915. The taxes were assessed upon an electric light plant, water tank and ice house owned by the association and located in the borough. The local tax assessor placed a valuation of $83,000 upon this property. The association appealed from this valuation to the County Board of Taxation. Notwithstanding the taking of the appeal, the superintendent of the plaintiff association paid the whole amount of the tax by check to the borough without the knowledge that an appeal had been taken. The County Board made a slight reduction in the valuation and a further appeal was then taken to the State Board of Taxation and Assessment, and an additional reduction was ordered by that board, fixing the true value of the property at $34,900. The present suit was brought to recover the amount of the overpayment and was tried by the court without a jury.

The court found that the authority of the borough to assess the tax was not wholly wanting. The tax itself was only invalid to the extent that the taxing official disregarded the constitutional requirement that property must be assessed for taxes at its true value—that is to say, to the extent that the valuation put upon the property as the basis of levying the tax was in excess of its true value. The tax itself was paid pending the appeal.

The court held that the case was controlled by *Jersey City* v. *Riker (Supreme Court,* 1876, Beasley, C. J.), 38 *N. J. L.* 225. In that case the facts and the law applicable thereto are set forth by Chief Justice Beasley as follows:

"* * * the authority to levy the tax was not wholly wanting; and the payment, in the legal sense was voluntary; and under either of these conditions the law refuses to raise an implied promise to refund the money paid. Had this suit been brought upon the payment of the tax, and before any change in the situation had occurred the case would have been the ordinary one presented in the reports and ruled by the decisions. But that is not so; there is a new element here, and that is, the tax which was paid has been set aside. The consequence is the payment has nothing, either in theory

or in fact, to rest upon. The party is debarred from his action after a voluntary payment, because, of his own motion, he abandons his defense to the claim; this the present plaintiff did not do; on the contrary, he pushed his defense to a successful result. The payment of the tax in this cause has not added, in the least degree, to the litigation, and public policy, therefore, does not require a frustration of this procedure. The assessment being vacated by direct judicial action, the law raises an assumption to refund the money which can no longer be honestly retained. * * * upon its vacation the money paid cannot, in good conscience, be retained by the public."

In that case the plaintiff was assessed for the benefit to his property in Jersey City by the construction of a sewer. The assessment was paid by him and was subsequently set aside on *certiorari* by the Supreme Court. A re-assessment of the expenses of the sewer was then made by the commissioners for a lesser amount. The suit was brought to recover the difference between the sum paid and the amount thus re-assessed.

It was urged by the defendant in the Ocean Grove case that the decision in the Riker case only applied where the taxes were vacated by the Supreme Court or by the Court of Errors and Appeals upon a review of the former court's judgment. The court held that the words, "by direct judicial action" used in the opinion in the Riker case do not indicate such a limitation on the right of the taxpayer to recover a tax illegally assessed. The Chief Justice stated that the language used clearly describes a duly constituted authority exercising a judicial function with relation to the matter before it, citing *Campion* v. *Elizabeth* (1879, Beasley, C. J.), 41 *N. J. L.* 355.

In *Hahne Realty Corp.* v. *Newark* (1937, Brogan, C. J.), 119 *N. J. L.* 12; 194 *Atl. Rep.* 191, our Court of Errors and Appeals considered the right of a taxpayer who has paid taxes as assessed, though he disputes the amount of the assessment, to have interest on tax moneys refunded by the taxing district when the valuations fixed by the taxing district have, on taxpayer's appeal, been reduced by reviewing tax tribunals.

The learned Chief Justice held that the cases of *Jersey City* v. *Riker, supra; Jersey City* v. *O'Callaghan* (1879, Beasley, C. J.), 41 *Id.* 349, and *Ocean Grove, &c.,* v. *Bradley Beach, supra,* were not applicable because the question of reimbursement with interest was not involved in the cases.

In the Hahne case the taxpayer paid his taxes on the quarterly due dates and the court said that where the taxpayer pays the taxes called for by the assessment or valuation, though he disputes the amount thereof in advance of a hearing of the appeal, it seems clear that the payment is voluntarily made and at the risk of the taxpayer. The learned Chief Justice said:

"The assessment was not illegal *per se.* The valuation was too high—an error of judgment on the part of the assessor whose duty it is, under the statute, *supra* (section 202), to assess real and personal property at true value. The power to levy a proper tax was not wanting—there was no infirmity in the proceeding of making the assessment as was the situation in the cases upon which appellant relies. The excessive assessment was a mistake of fact. The appellant did not choose to retain that part of the tax money which it believed to be in excess of the true valuation, as it might have done legally, and litigate about the excess. It elected to pay first and litigate later. Under these circumstances we do not think the amount of taxes abated should carry interest."

In *Francis Realty Co.* v. *Newark (Essex County Circuit Court,* 1938, Smith, William A., C. C. J.), 16 *N. J. Mis. R.* 328; 199 *Atl. Rep.* 912, the matter was submitted on a motion to strike out the answer on the ground that it was not sufficient in law. On October 1st, 1934, the plaintiff owned real estate in Newark and appealed from the assessment which was carried to the State Board of Tax Appeals. Pending these appeals the plaintiff paid the taxes which were assessed for 1935. The State Board of Tax Appeals finally granted a reduction in the assessment. The action was brought to recover the overpayment of taxes aggregating $823.20. The answer contained an affirmative defense that the plaintiff had received credit for the refund by its application to tax charges due to the city. The credit was applied

against the 1936 real estate taxes. The city sought to justify this offset by virtue of *R. S.* 2:27-255; *N. J. S. A.* 2:27-255, "Offset against judgment of taxes, &c., due municipality." Judge Smith held that the determination of the Board of Tax Appeals does not fix the liability for payment but settles the amount of the assessment, and that the set-off statute was not applicable because it authorizes the set-off of the judgment where the taxpayer "is indebted to the municipality for taxes, assessments, water rates, or other indebtedness of a public nature." A tax against real estate is not a debt of the owner; it is not founded on a contract express or implied but is an imposition against the property and no personal liability attaches, citing *Wrightstown* v. *Salvation Army* (*Supreme Court*, 1921, Kalisch, J.), 97 *N. J. L.* 89; 123 *Atl. Rep.* 607; *Baker* v. *East Orange* (*Supreme Court*, 1920, Black, J.), 95 *N. J. L.* 365; 111 *Atl. Rep.* 681; *affirmed* (1921, P. C. on opinion below), 96 *N. J. L.* 267; 114 *Atl. Rep.* 926; *City of Camden* v. *Allen* (*Supreme Court*, 1857, Green, C. J.), 26 *N. J. L.* 398.

In *Bradley* v. *Dike* (*Supreme Court*, 1895), 57 *N. J. L.* 471; 32 *Atl. Rep.* 132, Chief Justice Beasley, in an action for breach of covenants in a conveyance (at *p.* 473), said:

"As our statutory regulations now stand, assessments of taxes for the current year do not become liens or encumbrances upon lands prior to the twentieth of December (*Suppl.* approved April 2d, 1888) antecedently to that period they subject the lands to a mere liability to a future lien, and such a liability is not essentially different from that which inheres in the land prior to the making of the assessment itself."

The case of *United States* v. *Alabama* (May 26th, 1941, Hughes, C. J.), 85 *Law Ed. Advance Opinions* 896, is not contrary to this rule because under the Alabama Tax Statute there construed, unlike our own, an inchoate lien as of the tax day for taxes to be assessed during the year is imposed as against subsequent mortgagees and purchasers acquiring an interest in the land, after the tax day, but before the perfecting of the tax lien by final assessment of the tax.

In *Cadmus* v. *Fagan* (1885, Magie, J.), 47 *N. J. L.* 549;

4 *Atl. Rep.* 323, there was an action on a covenant against encumbrances contained in a conveyance of lands in the City of Bayonne, dated September 26th, 1872. At that time an assessment for the expense of opening a street which had been laid on the lands and was confirmed September 28th, 1871, remained unpaid. In 1877 the assessment was vacated as to the prosecutors on *certiorari*. On June 14th, 1878, it was set aside as to all persons affected thereby. By the same order the Supreme Court appointed commissioners to make a new assessment. They made a new assessment which was confirmed March 21st, 1879. The plaintiff paid the later assessment on June 19th, 1883. The court held that the lien of the original assessment in this case attached to the land, not when the work was completed, but when the assessment was confirmed, and permitted the plaintiff to recover the amount of the new assessment.

In *Arimex Copper Co.* v. *Board of Assessors* (*Supreme Court,* 1903, Dixon, J.), 69 *N. J. L.* 121; 54 *Atl. Rep.* 244, the Supreme Court allowed the entry of a judgment reducing the franchise tax of the prosecutor to $2,500, but did not make an order for the restoration of the surplus paid, because a statute previously giving such authority had been repealed, and cited the case of *Singer Sewing Machine Co.* v. *Assessors* (*Supreme Court,* 1891, Dixon, J.), 54 *N. J. L.* 90; 22 *Atl. Rep.* 1085.

I therefore reach the conclusion that on a theory of unjust enrichment the plaintiff should have a summary judgment for $69.58, being its *pro rata* share of said sum of $286.65 based on the first quarterly installment of the 1939 taxes paid by it on March 14th, 1939, admitted by the fourth separate defense of the answer; and that as to the balance of $217.07 sought to be recovered by the plaintiff, the complaint should be stricken.

I will sign orders to strike the complaint and answer, in order to effectuate the entry of an appropriate judgment for the plaintiff in the Supreme Court, in conformity with the foregoing determination.